### CARROLL COUNTY SAVINGS BANK *v.* STROTHER.

1. A note given to T for the purchase money of an engine, and payable to him, was discounted by B for value, T, together with F and L, guarranteeing the payment of the note when due; but F and L were strangers to the original contract, and received no benefit from the discount of the note. *Held*, in action by B against F and L that defend-

ants should be permitted to show a failure of consideration in the note itself, as such failure would relieve them of liability under their guaranty.

2.  The judge having directed a verdict, this court considered an alleged error as to which no instruction to the jury was asked for.

3.  In an action on a guaranty of payment indorsed upon an unnegotiable instrument, it is not necessary in order to fix the guarantor's liability to prove demand of payment from the principal debtor, and notice to the guarantor of non-payment, nor the use of due diligence in pursuing the principal by legal process. Will the same rule apply to the guaranty of a negotiable instrument? *Cases fully considered and reviewed.*

4.  A note is not negotiable where it (1) contains a stipulation for the payment of "all counsel fees and expenses in collecting this note if it is sued or placed in the hands of counsel for collection ;" *or* (2) gives to the payee "full power of declaring this note due at any time they may deem this note insecure, even before the maturity of the same ;" *or* (3) promises to pay the amount named with exchange added.

5.  A provision in a note for the payment of usurious interest after maturity rests upon the same consideration as the other provisions of the note.

6.  Where a note stipulates for the payment of illegal interest after maturity "as agreed for negotiating and carrying this loan so long as it remains unpaid," this stipulation cannot be construed as intended to operate only as a penalty to enforce prompt payment, but it is usury.

7.  This note being usurious as to the maker, it is also usurious as to guarantors of its payment.

Before Pressley, J., Edgefield, November, 1886.

This was an action by the Carroll County Savings Bank of Uniontown against David Fowble and Edward Lynch (and others not served) on their guaranty of a note as follows :

"$656.            Saluda Old Town, S. C., March 30, 1878.

"Eighteen months after date I promise to pay to the order of the Taylor Manufacturing Company of Westminster six hundred and fifty-six dollars, payable at Central National Bank of Columbia, South Carolina, for value received, with exchange on New York, and if not paid when due, bear interest from maturity at the rate of ten per cent. per annum, as agreed for negotiating and carrying this loan, so long as it remains unpaid, and also all counsel fees and expenses in collecting this note if it is sued or placed in hands of counsel for collection ; hereby waiving all homestead and personal exemptions, without any relief whatever from valuation or appraisement laws. The express conditions of the sale

and purchase of the engine and saw-mill for which this note is given is such, that the title, ownership, or possession does not pass from the said Taylor Manufacturing Company of Westminster, until this note, with interest, is paid in full, the said Taylor Manufacturing Company of Westminster have full power of declaring this note due, and take possession of said engine and saw-mill, at any time they may deem this note insecure, even before the maturity of the same.

     "(Signed)             John C. Strother.

"For value received we hereby guarantee the payment of within note when due, and hereby waive the demand and notice of non-payment thereof.

$656 00

1 64

$657 64

"(Signed) Taylor Manufacturing Company, P. H. Irwin, Treasurer, J. E. Taylor, David Fowble, Edward Lynch, H. Haines."

Other matters are stated in the opinion of this court.

*Messrs. L. J. Jones* and *R. W. Shand,* for appellant.

*Mr. W. H. Lyles,* contra.

The guaranty in this case was an original undertaking, and the guarantors could be sued immediately. *Brandt Sur. & Guar.,* §§ 82, 86, 170; 1 *Rich.,* 285; 13 *Ibid.,* 31; 23 *Cent. Law J.,* 285; 25 *S. C.,* 476; 8 *N. Y.,* 207. A failure in the original consideration of the note was of no consequence, for the guaranty was based on the consideration of the discount. *Brandt Sur. & Guar.,* §§ 89, 121, 124; 25 *S. C.,* 235; *Story Prom. Notes,* 643, 645. The note was not usurious, for the high rate of interest was only a penalty to secure prompt payment. *Tyler Usury,* 204–217; 3 *Pars. Cont.,* 116; 55 *Am. Dec.,* 396, *in notes;* 7 *Wait Act. & Def.,* 608; 16 *N. W. Rep.,* 436; 17 *Cent. Law J.,* 138; 1 *Bail.,* 322; 3 *Pars. Cont.,* 156–158. The guaranty here was only to pay what was due at maturity, which was the debt without interest.

April 19, 1888. The opinion of the court was delivered by

Mr. Justice McIver. This is the second time that this case has been before us, and reference may be had to the case as

reported in 22 *S. C.*, 552, for a more detailed statement of the facts than it is deemed necessary now to make, especially for a copy of the written instrument upon which the action is founded. After the case was remanded to the Circuit Court under our former decision, the plaintiff amended its complaint so as to make, in addition to the appellants herein, John C. Strother, the Taylor Manufacturing Company, P. H. Irwin, treasurer, J. E. Taylor, and H. Haines, parties defendant, although at the former hearing plaintiff had discontinued its action against Strother, and suffered judgment to go against it in favor of said Strother for his costs and disbursements in the former action.

The complaint as amended is set out in full in the "Case" and alleges, amongst other things, that the paper called a note (and which for convenience we will designate in the same way), upon which the action is founded, with several others of a similar description, was given to secure the payment of the purchase money of a saw-mill and engine, sold by the Taylor Manufacturing Company to said Strother; that these notes were secured by a mortgage of the saw-mill and engine, as well as by "other papers" as collateral security; that the Taylor Manufacturing Company assigned all of said notes to the appellants, together with the aforesaid mortgage and other collaterals; that thereafter and before the maturity of the note, the appellants "desiring to negotiate the note herein set out with this plaintiff, transferred and assigned the above to the plaintiff, and for valuable consideration, together with the defendants, the Taylor Manufacturing Company, P. H. Irwin, treasurer, J. E. Taylor, and H. Haines, guaranteed the payment thereof," by an endorsement on said note, in these words: "For value received we hereby guarantee the payment of within note when due, and hereby waive the demand and notice of non-payment thereof;" that the appellants have seized and sold, under said mortgage, the engine and saw-mill, and have commenced to foreclose the collaterals held by them as aforesaid, but have refused to pay the plaintiff the note held by it.

None of the parties named as defendants, except the appellants, were served with the summons and complaint; and they answered, denying, amongst other things, that the Taylor Manufacturing Company had ever assigned to them any mortgage on

the engine and saw-mill, or other papers held by it, except a mortgage against Mrs. Edwards, "which has been foreclosed, and is in process of collection towards the payment of one of the notes given for the said engine and saw-mill, other than the one sued on in this case," which note appellants had taken up as indorsers. They admit that they instituted suit on one of the notes (other than the one sued on in this case), given for the said engine and saw-mill, and had the same sold under the judgment of the court given in that case, which did not near pay said judgment. As a further defence appellants insist that plaintiff is not entitled to recover against them : 1st. Because the consideration of the note has failed. 2nd. Because, as mere accommodation indorsers or guarantors, they are discharged by the failure of the plaintiff to use due diligence in collecting the note from the principal debtor, Strother. 3rd. Because the note is usurious in stipulating for the payment of interest at the rate of ten per cent. after maturity, which exceeds the rate allowed by law at the time the note was given, and because of the stipulation for the payment of counsel fees.

At the trial, on motion of the plaintiff, the Circuit Judge granted an order permitting the plaintiff to proceed against appellants without serving the other parties named as defendants, and "the plaintiff proved that the note in suit had been discounted by the plaintiff for value, in due course of business, at its banking office in Maryland, and also proved the signatures of David Fowble and Edward Lynch to the guaranty indorsed on the note, and also proved the date of such transfer and guaranty, which was before the maturity of said note." This, so far as the "Case" shows, was all the testimony offered at the trial on behalf of the plaintiff. The defendant then offered Strother as a witness to prove failure in the consideration of the note upon which the action was founded, but, upon objection from plaintiff, this testimony was not received, the Circuit Judge holding "that as between the plaintiff and these defendants, a failure in the original consideration of the note was of no consequence, as it was against that very thing, in part, that these defendants had guaranteed the plaintiff."

No further testimony being offered, the Circuit Judge charged

the jury that the stipulation in the note for the payment of ten per cent. interest after maturity was without consideration, inasmuch as there was nothing to bind the plaintiff to extend the time for payment after maturity, and hence such stipulation did not make the note usurious. He therefore instructed the jury that the plaintiff was entitled to recover the whole amount of the note, with interest thereon, from its maturity, at the rate of seven per cent. per annum. The jury having rendered a verdict in accordance with this instruction, and judgment being entered thereon, the defendants appeal upon the several grounds set out in the record, which allege, substantially, the following errors : 1st. In refusing to permit testimony to be offered tending to show a failure of consideration in the note. 2nd. In charging the jury that the plaintiff was entitled to a verdict, "when the facts showed that plaintiff had not used due diligence in seeking to recover the debt from the maker" of the note. 3rd. In instructing the jury that the note was not rendered usurious by the stipulation for the payment of interest at the rate of ten per cent. per annum, after maturity.

In considering the question raised by the first ground, it will be necessary to keep in mind the fact that there was no evidence tending to show that appellants had any interest in or connection with the Taylor Manufacturing Company, or that they received any benefit from the discount of the note by the plaintiff. So far as appears from the face of the paper, these appellants were entire strangers to the original contract between Strother and the Taylor Manufacturing Company, and for anything that appears, their only connection with the discount of the note by the plaintiff was, as they claim in their answers, that of mere accommodation guarantors. It is true that it is alleged in the complaint that the Taylor Manufacturing Company transferred the note to these appellants and that they, desiring to negotiate the same, transferred it, for valuable consideration, to plaintiff, guaranteeing its payment when due, which might be regarded as implying that the note was discounted for the benefit of these appellants ; but these allegations, except as to the guaranty of the note, are distinctly denied by the appellants in their answers, as may be seen by reference to the pleadings, which are fully set out in the

"Case," and there is no testimony adduced in support of such allegations.

The question, then, as to the admissibility of the testimony proposed for the purpose of showing a failure in the consideration of the note, must be considered as if these appellants were strangers to the original contract, and received no benefit from the discount of the note. Looking at the case in that aspect, the first inquiry is, what was the contract of these appellants? Their agreement, as expressed in the writing indorsed on the note, was for "the payment of within note when due." Their contract was one of guaranty, which is a collateral undertaking for the payment of a debt of another. The plain meaning of the terms in which their contract was expressed is that if Strother, the maker of the note, does not pay it when due, we will do so. It was therefore a contract to perform Strother's contract, if he failed to do so. Whatever, then, would have the effect of relieving Strother from the payment of the whole, or any part, of the amount named in his contract, it would seem ought to have the effect of relieving the appellants to the same extent. If the appellants have contracted to pay Strother's debt, and that debt is legally ascertained to be, by reason of failure of consideration, less than what it purports to be, surely these appellants cannot be required to pay any more than what was justly and legally due on the note which they guaranteed.

As is said in 2 *Pars. Cont.*, 4: "In general the liability of the guarantor is measured by that of the principal, and will be so construed, unless a less or a larger liability is expressly assumed by the guarantor." And again at page 15: "The guarantor cannot be held to any greater extent than the original debtor, either in point of amount or of time." So it was said by Mr. Justice McGowan, in the former opinion in this case: "It is certainly true, as a general proposition, that a guaranty is a collateral undertaking, and it is essential to its existence that there should be some one liable as principal, and if there is no valid claim against the principal, there is no existing contract of guaranty." But, as these quotations show, this is not the universal rule; for where the principal is relieved upon some ground *personal* to himself, and not arising out of the contract itself, the

rule would not. apply, and the guarantor would still remain liable. For example, the guarantor of the note of an infant or of a married woman would still remain liable even though the principal might be discharged by reason of such disability, for there the defence is personal to the principal, and does not rest upon any vice in the contract itself. See *Brandt on Surety & Guaranty*, section 128; 2 *Parsons on Contracts*, 4; and *Smyley* v. *Head*, 2 *Rich.*, 590; 45 A. D., 750.

In the case under consideration the testimony which was excluded was not designed to show that the principal debtor should be relieved on account of any personal disability, but it was aimed at the validity of the contract itself, and its purpose was to show a vice therein, and hence this case falls under the general rule. If the action had been against the Taylor Manufacturing Company, or if it had been shown that the note was discounted by the plaintiff for the benefit of these appellants, then a different view might be taken; but in the case as presented we think there was error in excluding the testimony offered to show a failure of consideration.

As to the second ground of appeal, it might be sufficient to say that there was no ruling in the court below as to the point therein made. No testimony was offered tending to show the use of diligence in pursuing the principal debtor or the want of it, and the Circuit Judge gave no instruction, and was not requested to give any, to the jury upon that point. The subject of diligence is not even alluded to in the charge. It may be, however, that the appellants can be permitted to raise this question, inasmuch as the Circuit Judge instructed the jury to find a verdict for the plaintiff, although there was no testimony tending to show that the plaintiff had used any diligence in pursuing the principal debtor, and appellants may contend that such diligence was necessary in order to enable the plaintiff to maintain its action against the guarantors; and in that view we will consider the question.

As to the steps necessary to be taken in order to fix the liability of the guarantor of a note, there seems to be much conflict of authority, as may be seen by reference to the notes to the cases of *Lent* v. *Padelford* and *Douglass* v. *Reynolds*, 2 *Am. Lead. Cases*, 90, 101, as well as to the following more recent

cases: *Clay* v. *Edgerton,* 19 *Ohio St.,* 549 (2 *Am. Rep.,* 422); *Castle* v. *Rickly,* 44 *Ohio St.,* 490 (58 *Am. Rep.,* 839); *Mc-Murray* v. *Noyes,* 72 *N. Y.,* 523 (28 *Am. Rep.,* 180); *Bosman* v. *Akeley,* 39 *Mich.,* 710 (33 *Am. Rep.,* 447); *Newcomb* v. *Hale,* 90 *N. Y.,* 326 (43 *Am. Rep.,* 173); *National Loan & Building Association* v. *Lichtenwalner,* 100 *Penn. St.,* 100 (45 *Am. Rep.,* 359); *Brackett* v. *Rich,* 23 *Minn.,* 485 (23 *Am. Rep.,* 703).

In some of the States a distinction is taken between the guaranty of a negotiable and an unnegotiable note; in the former demand and notice being necessary to fix the liability of the guarantor, while in the latter no such necessity exists. Again, in some of the States it is necessary to pursue promptly the principal debtor by legal process, bringing the action at the first term after default in payment, while in others there is no such requirement. Again, a distinction is taken between a guaranty of the *payment* of a note, and a guaranty of its *collection;* in the former the guarantor being immediately liable upon the failure of the principal debtor to pay the note at its maturity, while in the latter he is only liable after failure of the creditor to enforce collection from the principal debtor by the prompt use of legal process. And in some of the States where demand and notice, or other precedent steps, are necessary to fix the liability of the guarantor, it is held that a failure to take such steps will constitute a defence to the guarantor only to the extent of the injury sustained by him by reason of such failure.

Even in our own State the cases do not seem to be entirely in accord. In *Wilson* v. *Mullen* (3 *McCord,* 236, decided in 1825), defendant assigned to plaintiff an unnegotiable note, and by a writing indorsed thereon, promised "to make the same good if it was not." Plaintiff sued the maker of the note to the first term and got judgment at the second term, but gave no notice to defendant until after judgment was recovered against the maker, which was nearly a year after the maturity of the note. The court held that defendant was liable, there being no necessity for notice, the indorsement being construed to be a guaranty of the solvency of the maker, using this language: "All, therefore, that could be required of the indorsee (guarantee) was that he should

use the ordinary means to get payment from the maker before he should resort to the indorser" (guarantor). It will be observed, therefore, that this was really a guaranty of the *collectibility*, and not of the *payment* of the note, and it seems to have been so considered by the court.

*Barrett* v. *May* (2 *Bail.*, 1, decided in 1830) was an action upon the following indorsement placed upon a negotiable note before maturity: "I guaranty the payment of the within note to Barrett & Dunlap for value received." Held, that demand and notice was necessary to charge the defendant, who stood in the situation of an ordinary indorser. In that case nothing was said about the necessity of pursuing the principal debtor promptly ; and, in fact, the court manifestly regarded the defendant as a technical indorser, and not a guarantor. Hence the case can scarcely be regarded as in point.

*Benton* v. *Gibson* (1 *Hill*, 56, decided in 1832) was an action against defendant upon guaranties of a judgment and four notes, transferred by defendant to the plaintiff. The guaranty of the judgment, after stating the case, was in this form : "For value received I assign to B. K. Benton, or order, the above case ; * * * and I do hereby guaranty the payment of the above sum." One of the notes was not negotiable, and was not due at the time of the transfer—the others were, in form, negotiable, but were past due. The transfer was made by an indorsement on each of the notes in the following form : "I guaranty the payment of the within note to B. K. Benton, or bearer, for value received." All of these transfers bore date January 19, 1824. There was no demand on the maker, and no notice to defendant of non-payment, but before the unnegotiable note became due the maker removed from the State, and suits were brought on the other notes to fall term, 1824, and judgments recovered fall term, 1825, on which executions were issued and returned *nulla bona*, and the action against the guarantor was commenced in March, 1830. The questions were : 1st. Whether these guaranties were absolute and unconditional promises to pay. 2nd. Whether demand and notice was necessary. The court held that there was a distinction between the guaranty of negotiable and unnegotiable instruments ; that these guaranties were general guaranties of

the solvency of the principal debtor, and that in case of such a guaranty of an unnegotiable note, all that the law requires as a condition of the guarantor's liability is, that the guarantee should, within a reasonable time, first seek payment from the principal debtor by the ordinary legal process, except where, by reason of the insolvency of the principal, or his removal from the State, legal process would be useless. But where the note is, in form, negotiable, a general guaranty is, in legal effect, an endorsement; and therefore, even when made after maturity, demand and notice within a reasonable time are necessary. In this case Judge O'Neall, in delivering the opinion of the court, expressly repudiates the authority of *Allen* v. *Rightmere* (20 *Johns.*, 365 ; 11 A. D., 288), which, as we will see in the next case to be cited, was recognized and followed.

*Bank* v. *Hammond* (1 *Rich.*, 281, decided in 1845) was an action on a guaranty of a bond. The form of the guaranty is not given, but in the Circuit Judge's report of the case it is stated that the bond was for $20,000, and "on its back was the guaranty—a writing without seal, signed by the defendants, McDuffie, Pinckney, and McRae, whereby, as expressed in consideration of the loan, at their request to Hamilton, of the money secured by the bond, they severally guaranty the payment to the extent of the sums opposite to their names. and opposite to each name was the sum of $5,000." One of the questions made was, whether demand and notice was necessary, and upon this point the court held: "The guaranty is absolute, amounting to an engagement to pay, according to the tenor of the bond, if the obligor should not. To the maker of such a guaranty notice is no more important than to an ordinary surety. 20 *Johns.*, 365 (*Allen* v. *Rightmere*), and 1 *McMull.*, 76 (*Carson* v. *Hill & Jones*). If the bond was unpaid at its maturity, his liability became fixed, and it is the debtor's duty to seek the creditor."

In the case of *Carson* v. *Hill & Jones* (cited from 1 *McMull.*), the action was on a joint and several promissory note, signed by William Hill and W. G. Davis, in their partnership name of Davis & Hill, and by Wiley Hill and Thomas F. Jones; but it appeared that the note, when signed, was in blank, except as to the amount, and was delivered to Davis & Hill, to be used by

them in Charleston.    They deposited it with the plaintiff in that
form as collateral security for acceptances and advances, and when
the indebtedness of Davis & Hill to plaintiff reached an amount ex-
ceeding the sum specified in the note, plaintiff filled up the blanks
and brought action against Wiley Hill and Jones, who contended,
amongst other defences, that the transaction amounted to a mere
guaranty on their part, and that they were entitled to require
that demand should have been made upon Davis & Hill, and
notice of non-payment should have been given to them.    The
court held that it was not a guaranty, and if it were, it was an
absolute guaranty for the payment of so much money, in which
case no demand or notice was necessary.    This case, therefore,
does not seem to be exactly in point.    It is observable that
neither in this case, nor in *Bank* v. *Hammond,* is there any allu-
sion to the case of *Benton* v. *Gibson, supra.*

In *Foster & Judd* v. *Tolleson* (13 *Rich.,* 31, decided in 1860),
it was held that where the payee of a note under seal, after it
was due, made the following indorsement on the note : "I assign
the within note to Foster & Judd and guaranty the payment
thereof for value received," the guarantor would not be dis-
charged by the failure of the assignee to give notice of non-pay-
ment, or to sue the maker of the note.    The guaranty was held
to be absolute, in which case no notice is necessary, and unless
there is a valid *contract* for an extension of time to the maker of
the note, the mere failure to sue him will not discharge the guar-
antor.    In this case also there is no reference to *Benton* v. *Gib-
son, supra,* and the decision is rested solely on the case of *Bank*
v. *Hammond, supra.*

*Wilson* v. *Dean* (21 *S. C.,* 327, decided in 1884) can scarcely
be regarded as authority, either one way or the other, upon the
question under consideration, for the remark there made as to the
necessity of using due diligence to collect the notes from the
makers before resorting to the guarantor was a mere passing
remark, not essential to the point decided in the case.    But more
than this, the guaranty there spoken of was, clearly, not a guar-
anty of the *payment,* but only of the *collectibility* of the notes,
in which case the decided weight of authority, as well as of reason,

is that the principal debtor must first be sued to insolvency before the liability of the guarantor is fixed.

Our last case upon the subject is *Munro* v. *Hill*, 25 *S. C.*, 476, decided in 1886. In that case the payee of a note under seal, after it was due, transferred the same to plaintiff's intestate, guaranteeing the payment thereof in the following form : "I assign to William J. Keenan the within note and interest, and guaranty the payment of the same without demand or notice of non-payment by the makers," and the action was upon this guaranty. Held, upon the authority of *Foster & Judd* v. *Tolleson*, *supra*, that the guarantor was not discharged by want of due diligence in pursuing the makers of the note, and that no demand or notice was necessary, even if it had not been waived.

From this review of the cases in this State, it would seem to be settled here that in an action upon a guaranty, indorsed upon an *unnegotiable* instrument, of the payment of the money secured thereby, it is not necessary to prove either demand or payment from the principal debtor, and notice of non-payment to the guarantor, in order to fix his liability, nor is it necessary to use due diligence in pursuing the principal debtor by the use of legal process. Whether the same rule would apply in case of a guaranty indorsed upon a *negotiable* instrument, even after maturity, or whether the rule laid down in *Benton* v. *Gibson*, *supra*, as to that class of instruments is still of force, is a question which will not arise in this case, unless the note on which this action is founded can be regarded as a negotiable note.

Our next inquiry, therefore, is whether this is a negotiable note ; and this depends upon the effect of three stipulations contained in the note : 1st. For the payment of "all counsel fees and expenses in collecting this note, if it is sued or placed in the hands of counsel for collection." 2nd. The provision whereby the payee is invested with "full power of declaring this note due and take possession of said engine and saw-mill at any time they may deem this note insecure, even before the maturity of the same." 3rd. The promise to pay the amount named "with exchange on New York."

So far as we are informed, we have no direct authority in this State as to the effect of either of the first two stipulations inserted

in a paper which is in form of a note. In *National Bank* v. *Gary* (18 *S. C.*, at page 287), it was intimated, though not decided, that an agreement to pay counsel fees would deprive a paper of its negotiability, because it imported into the contract an element of uncertainty as to the amount agreed to be paid. So in *Wallace* v. *Dyson* (1 *Speer*, 127), and *Barnes* v. *Gorman* (9 *Rich.*, 297), obligations, in the form of notes, promising to pay specified sums of money for the hire of slaves, and also to furnish clothing, pay taxes, &c., were held not to be promissory notes under statute of Anne, and, of course, therefore, not negotiable. So, also, in *Read* v. *McNulty* (12 *Rich.*, 445), a promise in writing to pay a certain sum of money at a specified time, "with current rate of exchange," was held not to be a promissory note under the statute of Anne, by reason of the uncertainty imported into the contract by the words quoted, as the rate of exchange was variable.

It will be observed, however, that in the three cases last cited the stipulations inserted rendered the amount payable at maturity of the paper uncertain, whereas, in the case under consideration, the only uncertainty as to the amount arises after maturity, and after the paper would thereby lose its negotiability, and hence these cases are not precisely in point. But inasmuch as the first requisite to the negotiability of the paper is that it should be a note, anything that would deprive it of that character must necessarily deprive it of any negotiability, and as a note must be an obligation for the payment of a *certain* sum of money, if the paper, in addition to an obligation to pay a specified sum of money, contains also an obligation to pay another undefined sum of money, even upon a contingency, that, it seems to us, will deprive it of the character of a note under the statute of Anne. Accordingly we find that in several of the States papers of this character containing stipulations to pay counsel fees have been held to lose thereby their negotiability, though there are some cases in other States in which a different view has been taken. For cases holding that a stipulation to pay counsel fees destroys the negotiability of the paper, see *First National Bank of Stillwater* v. *Larsen*, 60 *Wisc.*, 206 (50 *Am. Rep.*, 365); *First National Bank of Trenton* v. *Gay*, 63 *Mo.*, 33 (21 *Am. Rep.*,

430); *Woods* v. *North*, 84 *Penn. St.*, 407 (24 *Am. Rep.*, 201); *Johnston* v. *Speer*, 92 *Penn. St.*, 227 (37 *Am. Rep.*, 675); and *First National Bank of New Windsor* v. *Bynum*, 84 *N. C.*, 24 (37 *Am. Rep.*, 604). *Contra*, see *Gaar* v. *Louisville Banking Company*, 11 *Bush* (Ky.), 180 (21 *Am. Rep.*, 209), and cases cited in note.

As to the other stipulation whereby the payee is invested with authority to declare the so-called note due whenever it is deemed insecure, it seems to us clear that it is sufficient, not only to deprive the paper of its negotiability, but also of its character as a note; for it renders the time of payment altogether uncertain, and dependent only upon the option of the payee. See *First National Bank of Windsor* v. *Bynum, supra; Glidden* v. *Henry*, 104 *Ind.*, 278 (54 *Am. Rep.*, 316); *Mahoney* v. *Fitzpatrick*, 133 *Mass.*, 151 (43 *Am. Rep.*, 502); *Woodbury* v. *Roberts*, 59 *Iowa*, 348 (44 *Am. Rep.*, 685).

If, however, there was any doubt as to the effect of either of these stipulations, there can be none as to the effect of the provision whereby the maker promises to pay the amount specified "with exchange on New York," which has been distinctly held in *Read* v. *McNulty, supra*, to deprive the paper of its character as a note.

Holding then, as we do, that the paper upon which this action is founded is not negotiable, we need not consider the question, suggested above, as to the rule in case of a guaranty, such as the one here in question, indorsed upon a negotiable note.

The only remaining inquiry is, whether the provision in the note, that it is to bear interest at the rate of ten per cent. per annum, after maturity, renders the contract usurious—the rate of interest allowed by law, at the date of the contract, being only seven per cent. per annum. The language in which this provision is expressed is somewhat unusual and peculiar: "And if not paid when due, bears interest from maturity at the rate of ten per centum per annum as agreed for negotiating and carrying this loan, so long as it remains unpaid." The Circuit Judge held "that in order to make a note usurious by reason of unlawful interest being provided in it after maturity, the payee of the note must be under some obligation, either expressed or implied,

to extend the time; in other words, there must be a mutual binding; it must be an agreement which binds both parties; and if he be not under any obligation whatever to extend the time after maturity, then the fact that the other agrees and pays additional interest, the payee being entitled to sue at law and make him pay, does not make the note usurious." Accordingly he instructed the jury that there was nothing usurious in this contract.

It will be observed that the promise to pay interest, after maturity, at an unlawful rate, was incorporated in and formed a part of the original contract. It was one of the terms of that agreement, and if there was a valid consideration for such agreement, as it is conceded there was, such consideration being expressly stated in the note, it was clearly sufficient to support *all* of the terms of the agreement, including that by which the maker promised to pay an illegal rate of interest after the time fixed for the payment of the principal sum. The payee of the note had an engine and saw-mill for sale which the maker wished to buy, and the agreement for the sale being made, its terms were incorporated in the written instrument, called a note, upon which this action is founded, one of which was that if the maker of the note did not pay at maturity, he was then to pay interest at the rate of ten per cent. per annum, and for all that appears the payee would not have been willing to sell unless such a provision was incorporated in the contract. At all events, the parties saw fit to insert such a provision, and it seems to us that the promise to pay the ten per cent. interest after maturity rested as much upon the admitted consideration of the original contract as any of the other terms of such contract. It may be that if, *after the original contract was made*, the maker had agreed to pay ten per cent. interest, provided the payee would extend further indulgence, without any binding obligation upon the payee to extend such indulgence, that such an agreement would be without any consideration. But that is not the case before us, for here, as we have seen, the promise to pay ten per cent. interest was a part of the original contract, and rested upon the same consideration which supported that contract. We think, therefore, there was error in instructing the jury that there was no usury in the con-

tract because the promise to pay an illegal rate of interest was without consideration.

The counsel for respondent has, however, undertaken to sustain the charge to the jury upon another ground. His position, for which he cites a considerable array of authorities, is that the stipulation for the payment of interest at the rate of ten per. cent. per annum, after maturity, is only a penalty to enforce the punctual payment of the principal, and as the maker can avoid such penalty by paying promptly the principal according to the terms of the contract, there is no usury. It may be that when the terms used by the parties in a written contract show that the insertion of such a stipulation was designed simply as a penalty to enforce prompt payment, that the courts would give it such effect. But we do not think that is the case here. On the contrary, it seems to us that the language used in the contract shows that it was not the intention of the parties that this stipulation should operate simply as a penalty to enforce prompt payment. The promise is to pay this rate of interest *"as agreed for negotiating and carrying this loan so long as it remains unpaid."* This plainly implies that the parties contemplated and expected that the money should not be paid promptly at maturity, but that the debt should be *carried* for awhile *"as agreed."* It certainly does not show that the parties intended this stipulation as a penalty to enforce prompt payment of the debt, which the language used clearly indicated they did not expect to be promptly paid.

Finally it is urged that even if the note be usurious, that does not affect the contract of guaranty upon which these appellants are sued. But if, as we have seen, the liability of these guarantors must be measured by that of the principal debtor, in the case as now presented, and if the contract of the principal debtor is tainted with usury, the plaintiff can recover no more from the appellants than they could from the principal debtor.

The judgment of this court is, that the judgment of the Circuit Court be reversed, and the case remanded to that court for a new trial.