FALES & JENKS MCH. CO. v. BROWNING.

1. EVIDENCE—JUDGMENT.—RECORD of suit against a corporation, containing appointment of receiver, &c., properly admitted in evidence in suit by third party against corporation and guarantor of its debt, on question of diligence of plaintiff in pursuing principal debtor.

2. IBID.—BANKRUPTCY—ADMISSIONS—INSOLVENCY.—Duplicate original of schedule in bankruptcy is competent evidence as admission of party of insolvency.

3. IBID.—IBID.—Certified copy of bankruptcy record is original evidence, under bankrupt statute.

4. NONSUIT—PARTNERSHIP—JURY.—In passing on refusal of nonsuit, this Court will consider evidence offered by defendant after refusal, and there being some evidence here tending to show that defendants were partners, that question was properly sent to jury.

5. A GUARANTY made after a contract of sale of machinery, but before its delivery, needs no other consideration to support it, than that of the original contract; but under the facts here, the guarantor is found to have been benefitted by the purchase of the machinery.

6. IBID.—No evidence here sufficient to warrant the Court in holding that contract of guaranty had been so changed, or that there was such want of diligence in pursuing the original debtor, as to discharge the guarantor.

7. GUARANTY here is one of payment of non-negotiable contracts, and creditor was not bound, in order to bind guarantor, to notify of non-payment, nor to use due diligence, by suit or otherwise, in pursuing principal debtor.

Before J. P. CAREY, Special Judge, Laurens, December, 1902.   Affirmed.

Action by Fales and Jenks Machine Co. against J. S. Blalock, L. W. C. Blalock and M. E. Browning.   From judgment for plaintiff, defendant, Browning, appeals.

*Messrs. D. W. Robinson, Johnstone & Welch,* and *Ferguson & Featherstone,* for appellants.   The latter cite: *Doing a legal duty is an insufficient consideration:* 6 Ency., 750, 752; 1 Strob., 329; 2 Spears, 697; 2 Strob., 207; 14 S. E. R., 886; Chitty on Con., 54, 554; 1 Wait's A. & D., 104; 40 Barb., 512; Clark on Con., 184; 3 Ency., 836, 890; Harp.,

169; 33 Ala., 265; 6 Ency., 752. *There must be a new con-sideration:* 13 Conn., 170; Chitty on Con., 441; 32 S. C., 242; Chitty, 442, 51, 458; 1 Met., 278; 3 Brev., 17, 16 East., 356; 13 Johns, 190; 1 Strob., 40. *As to change of contract so as to release guarantor:* Brandt, 107; 3 Kent. Com., 124; 9 Wheat., 703; 23 S. C., 590; 17 S. C., 4; 22 S. C., 288; 165 N. Y., 372; 9 Wall, 13; Stearns on Sur., 103, 163; 10 Ga., 235; Brandt, 455; 24 Ency., 1 ed., 749; Brandt, 446; 14 Ency., 2 ed., 1162; 41 S. C., 334; 61 N. Y., 39; 14 Ill., 24; Brandt. secs. 387, 345; 5 Pet., 536-40; 1 How., 182; Thoob. on Sur., 66; Fell on Guar., 116; Brandt, sec. 79; 51 S. C., 121; 59 S. W. R., 698; Clark on Con., 675; Bish. on Con., secs. 1420, 1422; 4 Otto, 24; 2 Wall, 1; 121 U. S., 255. *This is guaranty of solvency and collectibility:* Brandt, 114; 14 Wood., 231; 55 Conn., 251; 43 Ga., 442; 3 McC., 236; 1 Hill, 56; 19 S. C., 599; 72 N. Y., 523; 1 Rich., 281; 13 Rich., 33; 25 S. C., 476; 28 S. C., 504; Brandt, sec. 168; Stearns on Sur., secs. 62, 63; 14 Ency., 2 ed., 1150; 21 S. C., 327; 14 Ency., 2 ed., 1163; 53 Hun., 367; 1 Ry. L. R., 351; 40 Ohio, 47.

*Messrs. N. B. Dial* and *F. P. McGowan,* contra, cite: *Records of bankrupt proceeding properly admitted:* Rev. Stat. U. S., 4992, 5054; 52 S. C., 657; 34 S. C., 18. *Court will consider testimony offered after refusal of nonsuit:* 9 Rich., 465; 12 Rich., 474; 9 S. C., 330; 63 S. C., 567. *As to consideration for guaranty:* 3 Hill, 48; 9 Ency., 70; 2 Starkie, 375; Brandt. on Sur., sec. 7; 41 S. C., 81; 48 S. C., 310. *As to discharge of guarantor:* 9 Ency., 83; 3 Rich., 121; 10 S. C., 200; 3 Strob. Eq., 64; 1 McC. Ch., 107; 5 S. C., 340; 1 DeS., 315; Story on Prom. Notes, 653; Brandt, 430; 46 S. C., 203. *Notice of default not necessary:* 1 McM., 76; 1 Rich., 285; 28 S. C., 504; 9 Ency., 80; 1 Dan. on Neg. Inst., sec. 104; Code, 1902, 1665; 2 Hill, 654; 10 Rich., 543; Brandt, sec. 174; 2 Dan. Neg. Inst., sec. 1788; Chitty on Bills, 324; 3 Brev., 186; 12 Ret., 497; 10 How., 461; Brandt, sec. 175; 28 S. C., 504.

December 8, 1903.   The opinion of the Court was delivered by

Mr. Justice Jones.   The Fales and Jenks Machine Co.,
a corporation of Rhode Island, on July 9th, 1900, contracted
in writing with the Goldville Manufacturing Co., of Gold-
ville, S. C., to deliver by November 1st, 1900, certain ma-
chinery for the erection of a yarn mill at the price of
$9,404.24, f. o. b. cars at Pawtucket, R. I.   "Terms of pay-
ment—one-half net cash, New York exchange thirty days
from date of bill of lading; balance by two (2) notes of
equal amounts at six (6) and twelve (12) months, respect-
ively, said notes to bear interest at the rate of six per cent.
(6) per annum and to be dated from date of bill of lading."
On the 19th day of November, 1900, as further assurance,
the defendants, J. S. Blalock, L. W. C. Blalock and M. E.
Browning, executed and delivered to plaintiff an instrument
in writing, which after reciting the terms of the contract
as above stated, stipulated as follows: "We hereby agree
to indorse the said notes, and should the Goldville Manufac-
turing Co. fail to pay for said machinery on terms of con-
tract made between themselves and the Fales and Jenks
Machine Co., dated July 9th, or shall fail to pay any notes
when due, which are given in payment, we the undersigned
do hereby bind and obligate ourselves, jointly and severally,
each with the other, and with the Fales and Jenks Machine
Co., to make good and pay to the Fales and Jenks Machine
Co. the amounts which may be due them in accordance with
the contract above mentioned."   The machinery was shipped
about December 1, 1900, was received and used for the pur-
poses intended, and the cash payment of $4,702.12 was made
on January 28, 1901.   The plaintiff did not require notes for
the credit portion of the contract.

This action was brought in January, 1902, for the balance
due against James S. Blalock, L. W. C. Blalock and Mrs.
M. E. Browning, individually, and as partners under the
firm name of Goldville Manufacturing Co.   The complaint
alleging that Mrs. Browning was a partner in the Goldville

Manufacturing Co. at the time the machinery was purchased, and further sought to make her liable as guarantor under the instrument above stated.　J. S. Blalock and L. W. C. Blalock having been adjudged bankrupt, each upon his own petition, the action was directed mainly against Mrs. Browning, and the issues arose upon her answer denying that she was a partner in the Goldville Manufacturing Co., and denying liability as guarantor upon the grounds: (1) that the guaranty was without consideration; (2) that the contract of July 9th, 1900, was so changed as to discharge her; (3) because of the negligence of plaintiff in prosecuting the claim against the principal debtor, and in failing to give timely notice of default to her as guarantor.　The action resulted in a verdict and judgment against Mrs. M. E. Browning for the amount claimed, from which she appeals.

1. As to the exception of admissibility of evidence.　We think there was no error, as claimed in the first exception, in admitting in evidence the complaint, answer and order appointing a receiver, in the case of Columbia, Newberry and Laurens Railroad Company v. Goldville Manufacturing Co. et al., even though Mrs. Browning was not a party to such suit.　The Goldville Manufacturing Co. was a party to the present suit, and the evidence was competent and relevant to show the fact and date of the insolvency of the Goldville Manufacturing Co., as bearing upon the issue as to the plaintiff's negligence in pursuing the principal debtor.　Nor for the same reason do we think there was any error, as claimed in the second exception, in admitting in evidence a duplicate of the bankrupt record in the matter of the bankruptcy of J. S. Blalock and L. W. C. Blalock.　Sec. 7 of the bankrupt act of Congress, approved July 1, 1898, provides that the bankrupt shall prepare and file a schedule of his property in triplicate, one for the use of the trustee.　One of these triplicate schedules would be competent as a statement by the party making it touching his insolvency.　If the paper proposed to be introduced was a certified copy

of the bankrupt record, it was admissible under sec. 21 of said act of Congress, approved July 1, 1898, relating to bankruptcy.

2. There was no error in the refusal of the motion for nonsuit. This motion was based upon several grounds: (1) because there was no testimony tending to show that Mrs. Browning was a partner in the Goldville Manufacturing Co. when the machinery was bought; (2) the guaranty was without consideration; (3) there was such change in the contract as discharged the guarantor, &c. It is manifest, however, if there was testimony tending to show that Mrs. Browning was partner in the firm of the Goldville Manufacturing Co., the nonsuit was properly refused, without regard to the matter presented in reference to Mrs. Browning's liability as guarantor. We will, therefore, first inquire whether there was any testimony tending to show that Mrs. Browning was a partner in the Goldville Manufacturing Co. At folio 29 of the case, in the testimony of L. W. C. Blalock, who is the brother of Mrs. M. E. Browning, both being children of J. S. Blalock, we find the following: "Q. Had you ever taken your sister into partnership in the firm before you went north? A. No, sir. Objected to by defendant. Q. Did she have any interest in it? A. Not at that time. Q. When did she have any interest in it? A. Just before we incorporated it. Q. How long before? A. I don't know, not a great while. Q. When you stated that she was a member in June, was that correct? A. I didn't state that she was a member in June. Objected to by defendant. By the Court: I don't think that is competent. Q. Well, was she a member of the firm at the time you wrote that letter? A. Yes, sir. Objected to by counsel for the defendant. By the Court: I will rule this letter out. Q. Well, I will ask if she was a member of the firm the first of June, 1900? Look at that paper (presenting paper to witness). A. No, sir, she was not a partner at that time, and she did not consent to come in at that time. I don't think she was in that early."

2—68

There was testimony that J. S. Blalock and L. W. C. Blalock were partners under the name of the Goldville Manufacturing Co., and there was some testimony by one of the firm, that Mrs Browning had some interest in the partnership before it became incorporated. The testimony showed that a charter of incorporation was taken out October 23, 1900. At folio 215, "Case," Mrs. Browning testified as follows: "I was at Goldville, the summer and fall of 1900, at my brother's house. Before the Goldville Manufacturing Co. was chartered. Father and bud were interested in it. Q. Did you convey your land to the Goldville Manufacturing Co. where the mill is built? (Objected to by Col. Ferguson as being secondary.) A. I don't know; I was never told that I was to get any stock in the company, but I supposed I would, as pa told me he wanted to make it a family affair. I suppose the correct time would be when Mr. L. W. C. Blalock says I was interested. I knew they were going to buy machinery for the mill, but I did not know that L. W. C. Blalock went north to buy the machinery some time during the summer of 1900. I don't know when the machinery was delivered relative to the signing of the contract. I was never asked for my consent to be director nor was I notified that I had been elected. My father and brother never discussed the affairs of the mill with me except in an informal and social way. My brother looked after my interests in the mill."

J. S. Blalock testified, at folio 148, that there was no partnership between him and Mrs. Browning; that she was not interested in the partnership, and that she became interested in the mill after it was incorporated. At folio 152, *et seq.,* he testified substantially, that before L. W. C. Blalock went north to buy machinery, he (J. S. Blalock) told him that he would help him if he would make it a 5,000 spindle mill, and when asked the question, "Was anything said about his taking his sister in, did you tell him, if he would take her in that you would help him?" J. S. Blalock answered, "We talked about it afterwards, and I said I wanted her in if I

took anything in it, that I was working for them." He further testified that they began the construction of a 5,000 spindle mill in August, 1900. Beginning at folio 155, this witness further testified as follows: "Q. You say she was not a partner at that time? A. No, sir.; I never recognized her as a partner at all. Q. You looked after her interest in the mill, did you not? A. I have looked after all her interests ever since she was born. Q. When you decided to make this mill a 5,000 mill, you decided to put her interest in that mill? A. I expected to put part of it there. Q. Where did she live? A. At Greenville, but she stayed at my home part of that year, and she was in bad health, her and her baby both. Q. She stayed there all the fall? A. Yes, sir. Q. You expected her to have an interest in the mill? A. Yes, sir; but she had none in the land. Q. You built that mill with your own hands? A. Yes, sir. Q. Made your own brick? A. Yes, sir, all but a few." While the testimony of J. S. Blalock was not given until after the refusal of the motion for nonsuit, it is not improper to refer to the same in considering whether to set aside the order of nonsuit. *Hicks* v. *Southern Railway*, 63 S. C., 567, 41 S. E., 753. We do not think it can be said that there was no testmony whatever tendng to show that Mrs. Browning was a partner in the Goldville Manufacturing Co., and it was proper to leave it to the jury to determine that issue.

The Circuit Court, however, did not rest the refusal of nonsuit upon this ground, but upon the ground that the evidence with reference to the guaranty was sufficient to carry the case to the jury. The exact language used by the Court, just previous to overruling the motion for nonsuit, was, "the question for me to decide is not whether that partnership existed between the parties; it is whether or not there was a sufficient consideration on which that guaranty was made." A strict guaranty, "is a promise to answer for the payment of some debt or the performance of some duty, in the case of the failure of another person who is himself in the first instance liable to such payment or

performance." 14 Ency. Law, 2 ed., 1128. "A considera-
tion is essential to the validity of a guaranty not under seal."
*McKenney* v. *Quilter*, 4 McCord, 409. 14 Ency. Law, 2 ed.,
1133, cases cited. The instrument in question, signed by
J. S. Blalock, L. W. C. Blalock and M. E. Browning, was
not a strict guaranty, in so far as it was signed by those who
constituted the partnership of the Goldville Manufacturing
Co., for in such case the undertaking is not an agreement to
pay the debt of another, but an agreement to pay one's own
debt, and is amply supported by the original consideration.
Inasmuch as there was some testimony tending to show that
Mrs. Browning was a partner in the firm of the Goldville
Manufacturing Co., this was some evidence tending to show
a consideration for the agreement called a guaranty.

But let us assume that Mrs. Browning was not a party to
the original contract of July 9, 1900, between the Goldville
Manufacturing Co. and plaintiff for the purchase of the
machinery, and that her contract of November 19, 1900, is
one of guaranty for the performance of the contract of the
firm of Goldville Manufacturing Co., composed of L. W. C.
Blalock and J. S. Blalock, either or both. The rule applica-
ble is thus stated in 14 Ency Law, 2 ed., 1133: "Where the
guaranty is collateral to the principal contract, but is made
at the same time and becomes an essential ground of the
credit given to the principal or direct debtor, there is not, or
need not be, any other consideration than that moving be-
tween the creditor and the original debtor under the princi-
pal contract. In this class of cases, a benefit to the debtor
without any benefit to the guarantor is sufficient. The con-
sideration need not pass directly from the party, giving to
the party receiving it. It is enough if a benefit arises to the
party for whom the guaranty is given, or the party receiving
the guaranty is or may be injured by it. Although the
guaranty is executed subsequently to the drafting of the prin-
cipal contract, they will, nevertheless, be deemed to have
been executed contemporaneously within the rule stated, if
delivered at the same time and before any obligation or lia-

bility is incurred under the principal contract.   And a guaranty for the payment of goods for which a contract of sale is made, though executed subsequently to the agreement of sale, is supported by a sufficient consideration, if the goods are not delivered until after the guaranty.   The contract of sale is not complete until delivery."   In 2 Daniel Neg. Inst., 3d. ed., sec. 1759, it is stated that there are three classes of cases which should be discriminated: "(1) When the guaranty is contemporaneous with the principal contract.   (2) When the guaranty is made after the contract is completed and is not for the benefit of the guarantor.   (3) When the guaranty is made after the contract is completed and is for the benefit of the guarantor.   In the first class, the consideration of the principal contract will support the guaranty. In the second class, the original consideration being exhausted, there must be some new and sufficient consideration to support it.   In the third class, the consideration moves directly to the guarantor for his own benefit, and is really his own debt."   In the leading case of *Leonard* v. *Vredenburg*, 8 John, 29, 5 Am. Dec., 317, Kent, C. J., said: "There are three distinct classes of cases on this subject which require to be discriminated: 1. Cases in which the guaranty or promise is collateral to the principal contract, but is made at the same time and becomes an essential ground of the credit given to the principal or direct debtor.   Here, as we have already seen, is not nor need be any other consideration than that moving between the creditor and original debtor. 2. Cases in which the collateral undertaking is subsequent to the debt, and was not the inducement of it, though the subsisting liability is the ground of the promise without any distinct and unconnected inducement.   Here must be some further consideration shown having an immediate respect to such liability, for the consideration for the original debt will not attach to this subsequent promise.   3. A third class of cases and to which I have already alluded, is when the promise to pay the debt of another arises out of some new and original consideration of benefit or harm moving be-

tween the newly contracting parties." We think there was evidence tending to place the agreement of November 19, 1900, within the first class. The contract for the sale of the machinery made on July 9, 1900, was executory, and not complete until the delivery of the machinery, at which time the liability of the principal debtor attached. The contract called the guaranty was executed November 19, 1900, and the machinery was not delivered until about December 1, 1900. At the time of the guaranty there was no subsisting debt or liability in favor of plaintiff by the principal debtor, as the machinery had not been delivered. When the liability of the principal debtor arose, the contract of guaranty instantly attached; so that it may fairly be said that the guaranty was not subsequent to, but was contemporaneous with, the debt of the principal debtor. Independent of the testimony excluded by the Circuit Court, there was some evidence tending to show that the delivery of the machinery was induced by the guaranty. And we may further state that there was some evidence tending to show that Mrs. Browning received a benefit from the delivery of the machinery. When the machinery was delivered and when the guaranty was executed, the partnership, Goldville Manufacturing Co., had merged into the corporation of that name, of which Mrs. Browning was a large stockholder and a director, J. S. Blalock being president, L. W. C. Blalock being treasurer, these being the only stockholders and directors. The machinery upon its arrival at Goldville, S. C., consigned to the Goldville Manufacturing Co., was taken by the menager of the corporation and placed in its mill, and the circumstances are such as to make it extremely probable, to say the least of it, that at the time of the guaranty the Blalocks and Mrs. Browning were aware that such use would be made of the machinery when delivered.

The remaining grounds upon which the nonsuit was sought need not be particularly noticed in this connection, as the foregoing is sufficient to sustain the refusal of nonsuit. We may remark generally that we find nothing in the

testimony which would have authorized the Court to determine as matter of law that the contract of guaranty had been changed or altered so as to discharge the guarantor, or that there was such want of diligence on the part of the plaintiff in pursuing the principal debtor as would discharge the guarantor.

3. The fifth exception alleges that the Circuit Court erred in construing the contract of November 19, to be a guaranty of payment instead of a guaranty of the collectibility of the debt. We think the Court properly construed the contract By it the parties agreed: (1) to indorse the said notes to be given for deferred payments under the contract of July 9. (2) to make good and pay the amounts which may be due plaintiff in accordance with said contract, should the Goldville Manufacturing Co. fail to pay for the machinery on the terms of the contract; (3) to make good and pay the amounts which may be due plaintiff in accordance with said contract, in case the Goldville Manufacturing Co. shall fail to pay any notes when due which are given in payment. It did not appear that any notes were ever received by plaintiff pursuant to the contract. While it is true L. W. C. Blalock testified that he mailed notes to plaintiff's company, Pawtucket, R. I., Mr. Jenks, president of the plaintiff company, testified that no notes were ever tendered to or received by the company. But this is immaterial, for, as we construe the contract, plaintiff's right to collect of Mrs. Browning the amount due for the machinery under the second stipulation of her contract, cannot be affected by the failure to take the notes for deferred payments. And if any notes had, in fact, been received by plaintiff not indorsed as agreed in the first stipulation, still in default of payment of such notes, Mrs. Browning, under the third stipulation, was obligated to pay the amounts due plaintiff, in accordance with the original contract. The guaranty was absolute not conditional. "If A. guarantees expressly or by implication to pay the note of B. to C., provided B. does not pay it, he becomes absolutely liable for its payment, immedi-

ately upon B.'s default and is therefore deemed an absolute guarantor of the due payment of the note of B. to C. But if A. guarantees the collectibility or goodness of B.'s note to C. he does not absolutely guarantee its payment, but only that he will pay it in the event that C. shall test the collectibility or goodness of the note by regular prosecution of suit against B. and shall be unable by due and reasonable diligence to enforce its payment. And accordingly he is only deemed a conditional guarantor of payment." 2 Daniel Neg. Inst., sec. 1769.

The construction of the contract practically disposes of the remaining exceptions by appellant, which are based upon the view that the guaranty was of collectibility merely. The contract of guaranty being an absolute engagement to pay according to the contract of July 19, if the principal debtor failed to pay, no notice to the guarantor of non-payment was necessary. *Carson* v. *Hill,* 1 McM., 76; *Bank* v. *Hammond,* 1 Rich., 285. Whether such notice would be necessary in the case of a guaranty of a negotiable instrument, need not be considered here, as the instrument or contract guaranteed in this case was not negotiable, in which case, certainly, there was no necessity to give notice of non-payment to the guarantor. *Savings Bank* v. *Strother,* 28 S. C., 576, 6 S. E., 313.

The Court declined to charge that it was the duty of plaintiff, after failure of the principal debtor to pay the debt, to pursue the principal debtor by legal process and make diligent effort to collect the debt from the principal, but on the contrary charged: "Mere non-action, passivity or indulgence on the part of the plaintiff, would not as matter of law discharge any of the guarantors from obligations under the guaranty to pay the debt, and nothing short of a valid contract upon sufficient legal consideration extending the time of payment of the contract or changing the terms of the contract would have the effect in law of releasing any of the guarantors or unless the plaintiff had refused to take some legal step to collect the debt after positive request from the

guarantor to do so." The refusal to charge as requested was proper under the principal stated in *Savings Bank* v. *Strother, supra,* and the charge is supported by numerous cases. *Parnell* v. *Price,* 3 Rich., 121; *Lang* v. *Brevard,* 3 Strob. Eq., 64; *Hampton* v. *Levy,* 1 McCh., 145; *Jackson* v. *Patrick,* 10 S. C., 200. Under the foregoing conclusions, the fifth, seventh, eighth, ninth, tenth and twelfth exceptions must be overruled.

This leaves to be noticed the sixth and eleventh exceptions —the thirteenth exception being a duplication of the eleventh. These exceptions are as follows: "6th. Because he erred in charging the jury as follows: 'If you find in this case, as a matter of fact, there was a contract for the purchase of machinery, and after the time the contract was entered into by Mrs. Browning, that the machinery was not delivered at that time but after that, that would be sufficient consideration but if not delivered it would not." "11th. He erred in charging the jury, as requested by defendant, as follows: 'If the jury believes from the evidence that at the time of the execution of the guaranty of November 19th, 1900, there was no valuable consideration for the execution of said guaranty, then such guaranty would be null and void;' and then modifying the same as follows: 'I charge you that, gentlemen, unless you should find from the testimony in this case that the guaranty was signed after the contract was made and before the delivery of the machinery, that would constitute a sufficient consideration."

Under these, it is argued that the charge complained of was, in effect, a charge with respect to the facts, in violation of the constitution, but it is manifest that the exceptions do not specifically raise any such question. As we understand the charge, the Court instructed the jury in accordance with the principle announced in considering the question of nonsuit above, viz: "that a guaranty for the payment of goods for which a contract of sale is made, though executed subsequently to the agreement of sale, is supported by a sufficient

consideration, if the goods are not delivered until after the guaranty."

The judgment of the Circuit Court is affirmed.