*J. Robinson*, for the appellant.

---

## RYAN *v.* VANLANDINGHAM.

The constitution of *Illinois* adopted in 1818, clearly recognizes the legal corporate existence of the *Bank of Illinois*, previously chartered by an act of the territorial legislature, and its corporate existence has also been fully recognized by various acts of the *Illinois* legislature, and especially by an act of 1835, extending its charter for twenty years.

If a promissory note be given to a company as a corporation, the maker is estopped (if the corporation could have had a constitutional existence) from denying that, at the date of the note, the company was a corporation.

To hold legislative enactments of a sister state invalid, on the ground of a supposed conflict with the constitution of that state, and especially when the legislature of such state has, by repeated enactments, recognized them as valid, would be a delicate matter, and would require a case free from doubt.

By the provision in the constitution of *Illinois* prohibiting all other banks or monied institutions but those already provided by law, except a state bank and its branches, banks then in being were exempted from the prohibition, and might be continued during the pleasure of the legislature.

The general act of the legislature of *Illinois*, passed in 1833, limiting the rate of interest to 12 per cent., upon special contracts, can not be regarded as part of the charter of the *Bank of Illinois*, nor as conferring any rights on that institution.

A corporation must be governed by the law which created it, and by those legislative enactments which in terms apply to it.

At the common law a contract tainted with usury was void.

The act extending the charter of the *Bank of Illinois*, authorized interest to be taken upon loans for six months or under, at the rate of 6 per cent. per annum, and upon loans for a longer period than six months, at the rate of 8 per cent. per annum. There was also an act of the legislature of that state

May Term,
1856.

RYAN
v.
VANLAND-
INGHAM.

adopting the common law. The defendant executed to the bank a note for 2,000 dollars, payable six months after date, with a stipulation for the payment of interest at the rate of 8 per cent. per annum after maturity. *Held*, that the contract was not usurious.

The rules of construction applicable to legislation on subjects in which the people at large are interested, are essentially different from those which apply to private grants, to individuals or artificial persons, of powers and privileges conferred to be exercised with special reference to their own advantage. The former are to be expounded liberally and beneficially, to effectuate the purposes for which they were created; the latter are to be construed strictly as against the grantees.

The legislature of *Illinois*, in 1843, passed an act to put the *Bank of Illinois* into liquidation, and, in 1845, a supplementary act was passed, which provided that all the effects of the bank should be transferred to four assignees. It then required that the real estate should be conveyed to all the assignees jointly, and that the personal effects of the bank at *S*. and of the branch at *L*. should be assigned to *A*. and *B*., and of the other branches to the other assignees; but it did not require that it should be done jointly, with or without the right of survivorship. The bank afterward assigned the note upon which the present suit was brought, (which belonged to the bank at *S*.) to *A*. and *B*. and the survivor, and *A*. having died, *B*. brought suit upon the note.

*Held*, that an assignment of the note to *A*. and *B*., with the right of survivorship, was authorized by the act.

*Held*, also, that the circumstance that the act contained a provision for filling vacancies, and that the vacancy occasioned by *A.'s* death was not filled, did not render the assignment inoperative.

*Held*, also, that the assignment, independent of the statute, created a common law right, which the creditors of the bank had a right to have enforced for their benefit, whether by both assignees or by the survivor, and whether in or out of the time prescribed by the act.

*Held*, also, that *B*. had a right, in this state, whether clothed with the legal title or not, to sue as a trustee upon the note.

The 17th section of said act of 1845 was not designed to limit the assignees to sue within four years; nor was the act of 1849 "for the relief of the assignees" of said bank," and to extend the time for the liquidation of the affairs of said bank," designed to limit their right to sue to *January* 1, 1851.

It is a general rule in the construction of remedial statutes, that the time within which an act is to be done is not to be treated as essential, unless it is made so by the act in express terms.

An extinguishment of the debts due to a corporation, follows upon its dissolution, only where there is no legal provision to prevent it.

The debts due to the *Bank of Illinois*, after the assignment thereof to trustees for the benefit of creditors, by the act cited, had the same force in the hands of the assignees, after the dissolution of the corporation, as the rights and credits of deceased persons in the hands of their representatives.

A seizure of the property of a corporation is different from a forfeiture and seizure of its franchises.

May Term,
1856.

RYAN
v.
VANLAND-
INGHAM.

Tuesday,
May 27.

APPEAL from the *Vanderburgh* Circuit Court.

GOOKINS, J.—This action was brought by *Ryan*, as assignee of the *Bank of Illinois*, against *Vanlandingham*, as the maker of two promissory notes, each for the sum of 2,000 dollars, payable to the president, directors and company of said bank, dated at *Shawneetown*, one *March* 5, 1841, and the other *May* 5, 1841, each due six months after date. The first note contains a stipulation for the payment of interest at the rate of 8 per cent. per annum, after maturity; the second for the payment of 6 per cent. after maturity.

The complaint contains several enactments of the territorial and state governments of *Illinois*. The first is the act of incorporation of the *Bank of Illinois*, passed by the territorial legislature, approved *December* 28, 1816, which was to expire *January* 1, 1837; the second, an act passed by the state legislature, approved *February* 12, 1835, continuing the act of incorporation for twenty years from *January* 1, 1837. On the 25th of *February*, 1843, an act was passed for putting the bank into liquidation, and an act supplemental thereto was approved *February* 28, 1845. The corporation was required to accept or reject the provisions of the latter act within thirty days; and within that time it was accepted by a resolution of the board of directors. It required the bank to make an assignment of all its effects, real and personal, to *Caldwell*, *Ryan* (the plaintiff,) *Hardin* and *Dunlap*. The real estate was to be assigned to all the assignees jointly; the personal estate, rights, credits and debts due to the bank at *Shawneetown* and the branch at *Lawrenceville*, were required to be assigned to *Caldwell* and *Ryan*, and those due to the branches at *Jacksonville*, *Alton* and *Pekin*, to *Hardin* and *Dunlap*. On the 10th of *April*, 1845, the bank made an assignment, pursuant to the requirements of this act, to *Caldwell* and *Ryan*, of the personal effects of the bank at *Shawneetown*, and delivered to them the notes set forth in the complaint. The assignment is to them and the survivor of them.

On the 10th of *February*, 1849, an act was passed, enlarging the time for closing up the affairs of the corporation until *January* 1, 1851. After the passage of this act, and before the commencement of the suit, *Caldwell*, the co-assignee of *Ryan*, died. The several acts and the assignment are made exhibits, and referred to by proper averments; and there are other acts of the legislature of *Illinois* annexed to the complaint, and embodied in the record by agreement, which will be noticed hereafter.

The defendant demurred to the complaint. The Circuit Court sustained the demurrer, and gave judgment for the defendant. The grounds of demurrer are as follows:

First. That the territorial legislature had no power to charter a bank.

We do not think it necessary to decide whether the territorial government had or had not power to charter a bank. A section of the constitution of *Illinois* is made a part of the record, which is as follows: "There shall be no other banks or monied institutions in this state but those already provided by law, except a state bank and its branches, which may be established and regulated by the general assembly of the state, as they may think proper." This was adopted in 1818, and clearly recognized the legal existence of the corporation. Its existence has also been fully recognized by the legislature of that state, by the various enactments embodied in the record, and especially by the act of 1835, extending its charter for twenty years.

But the appellee insists that the act of 1835 was inoperative for two reasons: 1. Because it is not averred that the corporation accepted the act; and, 2. Because, if accepted, it violated the section of the constitution above quoted; the extending of the charter being, it is insisted, equivalent to the granting of a new one.

The first objection is answered by an estoppel arising out of the contract. If the corporation could have had a constitutional existence, at the time the notes were executed, the defendant having contracted with it as such, can not be allowed to deny it. *John* v. *The Farmers' and Mechanics' Bank*, 2 Blackf. 367.

On the other point.   It would be a delicate matter for this Court to declare the acts of a sister state invalid, on the ground of a supposed conflict with the constitution of that state; and especially so, when the legislature of that state has, by repeated enactments, recognized them as valid.   It would require a case free from doubt to induce us so to declare.   The language of the section, we think, does not justify the conclusion which the appellee draws from it.   It declares that there shall be no *other* banks, &c., *but those already provided by law*, except a state bank, &c. We have already said this section recognized the then existence of the corporation, and we think such as were then in being were exempted from the prohibition contained in the section, and that they might be continued during the pleasure of the legislature.   We do not find that the constitutional question here raised has been passed upon by the Supreme Court of *Illinois;* but the existence of the bank has been recognized in repeated decisions of that Court.   *Ryan* v. *Jones*, 15 Ill. 1.—*Richeson* v. *Ryan, id.* 13.

Our conclusion upon the first, is our answer to the fourth cause of demurrer, which is, that it does not appear by the complaint that the bank accepted the act of extension.

The second cause of demurrer applies to one of the notes only, that which stipulates for the payment of 8 per cent. interest after due, which it is said makes the note usurious and void.

A general law was in force in *Illinois*, passed in 1833, limiting the rate of interest to 12 per cent. by special contract; but it can not be regarded as any part of the charter of the bank, nor as conferring any rights on that institution, which must be governed by the law of its existence, and by those acts which in terms apply to it.   The act extending the charter, authorizes interest to be taken on loans for six months or under, at the rate of 6 per cent. per annum, and on loans over six months at the rate of 8 per cent. per annum.   The record contains an act of the legislature of *Illinois*, adopting the common law.   If, therefore, the contract was usurious, it is void.   *Fowler* v. *Throck-*

*morton,* 6 Blackf. 326. We think the agreement of the parties, apparent from the language employed, was, that the loan was for six months; that if paid at maturity no interest was demandable; but if the borrower, by his own default of payment, extended the loan beyond that time, he should pay interest at the rate of 8 per cent. per annum. This brings the stipulation within the provisions of the charter, and renders the contract valid.

The third cause of demurrer denies the right of *Ryan* to maintain this action, on two grounds: 1. Because the power to maintain suits by the assignees, was conferred on *Caldwell* and *Ryan* jointly; that *Caldwell* being dead, no right of action survived to *Ryan;* and, 2. Because the powers conferred on the assignees expired by limitation on the 1st of *January,* 1851, which was before this suit was commenced.

In considering these objections, the first inquiry is, what rule of construction is to be applied to the statutes enacted for the purpose of winding up the affairs of this corporation? The appellee regards them in the light of acts conferring certain limited powers, like acts of incorporation, which imply a negative of all others; and if this were the true view of them, his conclusions would, perhaps, be unavoidable; but we think it is not. They are remedial statutes, enacted for the purpose, not of conferring powers upon a corporation, but of compelling a monied institution which had failed to answer the end of its creation, to pay its debts, and wind up its affairs. The first of the series, passed in 1843, took from the corporation all its banking powers, but contiued its corporate existence for four years, for the purpose above mentioned. It declared the charter repealed at the end of that time. The bank, it seems, did not accept the provisions of that act. The second was passed in 1845. It required the bank to accept it within thirty days; if accepted, an assignment was to be made to certain persons named, of all its effects, real and personal, who were to reduce them to possession, redeem the issues of the bank, by *pro rata* payments, from time to time, and settle up its affairs. If not accepted,

suit was to be instituted against the corporation in the name of the state, a receiver was to be appointed who was to perform the same duties prescribed to the assignees. In the performance of these duties, the public had a large interest. They were not essentially different from those committed to administrators of the estates of decedents.

The rules of construction applicable to legislation, on subjects in which the public at large are interested, are essentially different from those which apply to private grants to individuals or artificial persons, of powers and privileges conferred to be exercised with special reference to their own advantage. The former are to be expounded liberally and beneficially to effectuate the purposes for which they were enacted; the latter are to be construed strictly as against the grantees. *Bradley* v. *The New-York and New-Haven Railroad Company*, 21 Conn. 294. We shall perceive the frequent application of this rule, as we proceed. With this view of the nature of these acts, we are prepared to examine their details, as far as may be necessary in determining the two questions arising under the third cause of demurrer.

1. Can *Ryan, Caldwell* being dead, maintain this action?

The assignment was made to *Caldwell* and *Ryan*, and the survivor of them; and the question is, was it authorized to be so made? The act does not prescribe any particular form of assignment. It provides, in general terms, that all the effects of the bank shall be transferred to four assignees. It then requires the real estate to be conveyed to all the assignees jointly, and that the personal effects of the bank at *Shawneetown*, and of the branch at *Lawrenceville*, shall be assigned to *Caldwell* and *Ryan*, and of the other branches to the two other assignees; but does not require that it shall be done jointly, or with or without the right of survivorship. We think the assignment made by the bank, with the right of survivorship, was authorized by the act, there being no requirement upon the corporation to make it otherwise. It is true, it contains a provision for filling vacancies, but that the vacancy occasioned by *Caldwell's* death was not filled, did not render the assign-

ment inoperative. Perhaps, had the question arisen solely upon the appointment contained in the act, independent of the assignment, it might have required a different solution.

The remaining question in the case is, whether the right to sue had expired by efflux of time, when this action was commenced.

The 17th section of the act of *February* 28, 1845, is as follows:

" The assignees shall have four years from the passage of this act, to make final settlement of the affairs of the bank, without hindrance, otherwise than is provided in this act, any law to the contrary notwithstanding; and the debtors of the said bank shall be allowed the said term of four years for the payment of all debts due to the said bank, by paying the same in four equal annual instalments, with 6 per cent. interest, to be secured to said bank by four notes, with good approved security, payable in one, two, three and four years from the date of the assignment to said assignees, or the reception of the assets by said receiver or receivers, as the case may be, whether the debts be due or not, judgment or otherwise."

The act of *February* 10, 1849, is entitled " an act for the relief of the assignees of the *Bank of Illinois*, and to extend the time for the liquidation of the affairs of said bank." It provides that the time for the liquidation of the affairs of said bank, pursuant to the provisions of an act, &c., (reciting the title of the act of 1845,) be and the same is hereby extended to the first day of *January*, 1851."

It is evident that the period of four years for making a final settlement of the affairs of the bank, as provided in the above 17th section, was not designed as a limitation of the power of the assignees to sue within that time only. The period of four years is from the passage of the act, *February* 28, 1845, and it took effect from its passage. The bank had thirty days in which to accept or reject it; and, if accepted, the assignment was to be made within thirty days after acceptance. If rejected, the business was to go into the hands of a receiver. The assignees, or receiver,

according to the fact, were required to give debtors of the bank four years from *the date of the assignment* by the former, or the *receipt of the assets* by the latter, for the payment of their debts, on executing notes with surety, payable in four yearly instalments. The last instalments could not become due until some time after four years from the passage of the act. Consequently, if the four years here mentioned should be regarded as a limitation of the power to sue within that time, a fourth part of the debts due the bank were liable to be lost. Such a construction is too absurd to be tolerated; and yet this act is as explicit as to time, as that of 1849.

The latter act extends the time for liquidation, *pursuant to the provisions of the act of* 1845, to *January* 1, 1851. This part of the act contains no negative words. Are we authorized to add the words "and not after," by implication?

In *The Hartford and New-Haven Railroad Company* v. *Kennedy*, 12 Conn. 499, it was said that where a liberal construction is necessary to carry into effect the object of a remedial statute, although it be introductory of a new law, no negative ought in general to be implied. It is a general rule that in the construction of statutes of this kind, the time in which an act is to be done is not essential, unless made so by the act in express terms. *Rex* v. *Sparrow*, 2 Strange 1123; in which case the grounds on which the Court held an act valid, done out of time, although it was under a new statute, was, 1. That the public were interested to have it done; 2. Because the act contained no negative words; and, 3. Because the parties to be benefited by the act had no power to do it themselves; all of which apply with much force to the present case. In reviewing this case, lord *Mansfield*, in *Rex* v. *Loxdale*, 1 Burr. 447, said: There is a known distinction between circumstances which are of the essence of a thing required to be done by act of parliament, and clauses merely directory. The precise time, in many cases, is not of the essence. In *Doe* v. *Flagler*, 1 Ind. R. 542, the time for the performance of an act was held essential; also in *The Thames Manu-*

*facturing Company* v. *Lathrop*, 7 Conn. 555; but in those
cases it was held essential, upon the same principle upon
which it is held not to be essential in cases like the one
under review; that is, because the rights of the public are
to be affected by the act. In one case, those to be affected
were entitled to have the act done at the time; otherwise
they were injured. In the other case, they were entitled to
have it done, whether done within the time or not; other-
wise they were injured. See, also, as to the construction
of remedial statutes, *Ketcham* v. *The New-Albany and
Salem Railroad Company*, ante, p. 391.

There is a view of the case which comprehends both
branches of the argument arising under this cause of
demurrer. The assignment, independent of the statute,
created a common law right, which the creditors of the
corporation had a right to have enforced for their benefit,
whether by both assignees, or by the survivor of them;
and whether in or out of time. In this state, where the
distinctions between proceedings at law and in chancery
are abolished, the principles of equity would apply, and
would authorize *Ryan*, as a trustee, to sue, whether clothed
with the legal title or not. If he could have brought his
bill in chancery in the Courts of *Illinois* to recover a chose
in action, by virtue of the assignment, he can of course
maintain this suit in the Courts of this state.

We do not question the correctness of the doctrine ad-
vanced by the appellee, that upon the dissolution of a cor-
poration aggregate, the debts due to it are extinguished, as
was said in *The State Bank* v. *The State*, 1 Blackf. 267;
and for the reason there given, that, when dissolved, they
have no existence, and can have no right to or control over
anything whatever. They die and leave no representa-
tives. But extinguishment follows only where there is no
legal provision to prevent it; hence, it can not apply to
this case. The appellee assumes that the corporation
ceased to exist on the execution of the assignment. This
is by no means clear. The act of 1845, which the bank
accepted, did not, like that of 1843, which it refused, con-
tain a provision repealing the charter. A seizure of the

May Term,
1856.

property of a corporation is a very different thing from a forfeiture and seizure of its franchises. *The State Bank* v. *The State, supra.* But admitting that the corporation was extinct, that did not extinguish the debts due to it, as has been said, if provision was made to prevent it; and when assigned they had the same force, in the hands of the assignees, as the rights and credits of deceased persons in the hands of their representatives. The doctrines of reverter and extinguishment arise from necessity. The death of a corporation does not annihilate its property, and there being no heirs, it reverts to the last owner, because it can go no where else. So, when its credits fall from its lifeless hands, they cease for the want of a payee or obligee. *The State* v. *The State Bank, supra.* But here a payee has been provided, and the consequence which would otherwise have ensued is averted.

We are of the opinion that the complaint was sufficient, and that the demurrer to it should have been overruled.

*Per Curiam.*—The judgment is reversed with costs. Cause remanded, with instructions to the Circuit Court to permit the defendant to answer.

*C. Baker,* for the appellant.

*J. G. Jones* and *J. E. Blythe,* for the appellee.