SANDERS v. BAGWELL.

1. Any material alteration of a note after its delivery will destroy it as to the parties thereto not consenting; and any independent valid contract, made by the principal, which materially affects the terms of a note, will release a non-consenting surety.
2. Underneath a sealed note, payable at one day, with no provision as to interest, was written: "The above note is to be accounted for with interest at 8 per cent. per annum," signed by the first maker. *Held,* that this addendum was not intended to be binding only on the party who signed it, but to be a change in the rate of interest of the note itself, and thereby the note was rendered void as to the other maker, who did not consent to this alteration in the contract.
3. This addendum was *nudum pactum,* no consideration therefor being alleged and proved.
4. A material change in the terms of a written contract, *e. g.,* in the rate of interest, based upon a valid consideration, is binding upon the principal debtor who made the change, but the non-consenting surety is

thereby discharged without regard to whether the change was benefi-
cial to the surety or not.

Before HUDSON, J., Spartanburg, March, 1889.

This was an action by C. P. Sanders, as executor of Alie Lips-
comb, against S. M. Bagwell, administrator of W. H. Bagwell,
begun in April, 1888.    The opinion states the case.

*Messrs. W. S. Thomason* and *Bomar & Simpson,* for appellant.

*Messrs. Carlisle & Hydrick,* contra.

March 6, 1890.    The opinion of the court was delivered by

MR. CHIEF JUSTICE SIMPSON.    One Wash Pool, in October,
1873, executed a sealed note, with W. H. Bagwell as surety, to
Alie Lipscomb, for $440, payable one day after date.    The rate
of interest was not mentioned, but, of course, it bore from its date
the usual interest of 7 per cent.    Some time after this both Pool
and Bagwell died, and the action below was brought by Alie
Lipscomb on this note against the defendant as administrator of
Bagwell, deceased.    During the progress of this action Alie Lips-
comb died, and her executor, Sanders, was substituted as plain-
tiff.    At the trial plaintiff introduced the note, stating that there
was an *addendum* thereto, which he did not introduce in evi-
dence, and to which he would object if the defendant attempted
to introduce it.    Upon the close of plaintiff's testimony, the de-
fence introduced this *addendum,* which, it seems, was "on the
lower end of the note."    The *addendum* was in the following
words, to wit : "The above note is to be accounted for with inter-
est at 8 per cent. per annum.    [Signed ]    Wash Pool."    His
honor, Judge Hudson, presiding, "charged that the note was a
good and valid obligation of Bagwell, and that there was nothing
in the case going to discharge him from liability," holding that
the *addendum* relied on as a defence should be determined under
the law applicable to contracts, under which he held that said
*addendum* was without consideration, and was a *nudum pactum*
as to Pool, no consideration appearing on its face, and none
proved.    He further held that, even if there had been a consid-

eration, it was not such an alteration of the contract as would prejudice the surety, and therefore, if the jury believed the evidence, they should render a verdict for the plaintiff for the amount of the note, which was accordingly rendered.

The defendant appealed upon exceptions, as follows : "(1) Because, it is respectfully submitted, the Circuit Judge erred in holding the agreement signed by the principal, Pool, changing the rate of interest on the note in suit to eight per cent., was a *nudum pactum*, and not binding on said principal, and in so charging the jury. (2) In holding that, even if the agreement was a valid contract, binding on the principal, it did not change the terms of the original contract to the prejudice of the surety, and hence the estate of the surety was not discharged, and in so charging the jury. (3) In not charging the jury that this agreement was binding on Pool, unless he could show want of consideration, and, being so binding on said principal, it released the surety. (4) In not charging the jury that this agreement showed on its face a consideration ; that it was binding on the principal, Pool. (5) In not at least leaving it to the jury to say whether, from the evidence, there was any binding agreement made with the principal, Pool, which changed the terms of the original contract. (6) In thus passing upon questions of fact which belonged exclusively to the jury. (7) In instructing a verdict for the plaintiff for the amount claimed."

It is proper to state here, briefly, our understanding of the law applicable to questions as to the effect of alterations in notes, after execution, upon the rights of the parties thereto, and also of subsequent agreements or contracts in reference to such notes. Any material alteration of a note after execution and delivery will destroy it as to all the parties not consenting to such alteration ; and this, too, whether there is a single maker or one or more makers, whether they are joint or several, and whether they are all principals or some are sureties. This is upon the ground that every contracting party has the right to stand upon the contract which he makes, and no one is authorized to change such contract without his consent, and therefore any alteration in the body of the note making such change renders it void. Upon the same principle, any independent valid contract, made by the

principal as to such note, will release the surety in the absence
of his consent, whether said contract is prejudicial to the surety
or not; provided, however, the contract is one which affects the
note in some material point of view, such as obtaining time, in-
creasing the amount of either principal or interest, &c.

Now, the question arises, did his honor charge in conflict with
these principles? First, was there a material alteration of this
note by the *addendum*, or was the *addendum* to be considered
and adjudged under the law of contracts; and, if so, was his
honor's ruling in that aspect of the question correct? There is
no doubt that had this *addendum* been incorporated directly into
the body of the note, by interlineation or otherwise, that the note
would have been destroyed utterly as to Bagwell at least. It
was, however, not thus incorporated, but was written below, as
it is said in the testimony, on the "lower end of the note." In
a case in New York (the case of *Woodworth* v. *Bank of Ameri-
ca*, 19 Johns., 391), referred to and discussed by Mr. Daniel in
his work on negotiable notes, &c., a memorandum in the margin
of the note, simply changing the place of payment, was held as
fatal as if incorporated in the body. 2 Dan. Neg. Inst., § 1383.
And he further states that, where the words "with lawful inter-
est" were written on the corner of the note, it was held to be
material, and to avoid the note as against non-consenting parties.
*Ibid.*, § 1385, referring in the notes to *Warrington* v. *Early*, 2
El. & Bl., 763, and *Sutton* v. *Toomer*, 7 Barn. & C., 416. See
2 Dan. Neg. Inst., §§ 1383, 1385, and the notes.

In addition, we think that in the case below the evident intent
of the *addendum* was to alter the note in the material matter of
the rate of interest, and not to make a new contract, binding upon
Pool alone in reference thereto. What is its language? Not
that "I, Wash Pool, promise and agree to pay interest at said
rate," but that the above note is to be accounted for at said rate.
By whom? Why, by the makers. That seems to us to be the
fair and reasonable explanation of the matter, and of the intent
of the *addendum ;* and inasmuch as doubtless there could be no
difference of opinion as to its effect had it been interlined in the
note, we think, upon the authorities above, and on account of its
purpose, there should be no difference, because of the fact that it

16–32

was written on the lower end of said note. It was still on the note, and, as far as Pool could make it so, was a part thereof. See, also, 1 Dan. Neg. Inst., §§ 149, 150, as to memorandums on notes, where numerous examples are given of matters incorporated in the note by endorsement on the same paper on which the note is written, whether in the "four corners," at the bottom, on the margin, or on the back. It is true, the most of these examples refer to memoranda made at the time of the execution of the note, but they determine the question that an alteration may be made thereby, although not literally incorporated in the body ; and if so when thus made contemporaneously with the note, why not have the same effect when made afterwards ?

But supposing the *addendum* is to be looked at in the light of a contract, was his honor correct in his charge thereon ? The *addendum*, if examined under the law of contract, upon its face, and in the absence of evidence, we think, with his honor, was a *nudum pactum*. Sealed instruments, notes, &c., it is true, import a consideration, and also bills of exchange and negotiable notes ; not so, however, with other contracts and notes. On the contrary, in these latter cases a consideration must be both alleged and proved. We do not regard the *addendum* as either a seal note or a negotiable promissory note.

But we think his honor was in error in holding that even if the contract was based upon a sufficient consideration, and therefore binding on Pool, yet that the surety was not discharged, because, as his honor held, the surety not being bound, he was not prejudiced ; in other words, that, to release the surety by a new contract made by the principal with the payee, the contract must be prejudicial to the surety. We do not so understand the law upon the subject. On the contrary, any valid contract between the payee and the principal, by which the terms of the original note are altered in any material particular, whether prejudicial to the surety or not, will vitiate the note as to him, if made without his consent. *Gardner* v. *Gardner*, 23 S. C., 588, and the cases there cited. It is hardly necessary to say that an alteration as to the time of payment, the amount to be paid, or the rate of interest, and, as held in many cases, the place of payment,

would be material, and would release the surety although the change might in some cases be beneficial to the surety.

It is the judgment of this court, that the judgment of the Circuit Court be reversed.