WHITE v. HARRIS.

1. NOTES.—The provisions in a promissory negotiable note to pay ten per cent. attorney's fees after default for collection, does not render the note non-negotiable.

Mr. JUSTICE GARY *dissents.*

2. IBID.—ALTERATION—SPOLIATION—JURY.—If a party under obligation to pay a note, alter it by striking out a clause as to payment of attorney's fees for collection after default, it is a material alteration, which relieves the maker of liability; but if a stranger strike out such provision, it is a spoliation, and does not relieve the maker of liability; and whether, in this case, such striking out is an alteration or spoliation, is for the jury.

Before BUCHANAN, J., Union, October term, 1902. Reversed.

Action by T. H. White and M. S. Lewis against I. S. Harris, W. C. Nelson and R. N. Harris. From judgment for plaintiffs, defendants appeal on the following exceptions:

"1. Because the presiding Judge erred in refusing to admit testimony of one of the defendants as to a conversation between him and one Cross, one of the payees named in the notes, in reference to the transaction in which the notes were given, on the ground that defendant could not 'invalidate that note,' thus precluding the defendants from defenses they might have set up against the payees, Cross and Camp; and thereafter the presiding Judge refused motion of defendants for direction of a verdict on the ground that the defendants did not set up failure of consideration, it being not sufficient to set up fraud only, and at the same time held that the owner of the notes simply stepped into the shoes of the payee. .

"2. Because the presiding Judge erred in refusing to hold that a note providing for ten per cent. attorneys' fees is a non-negotiable note, giving an endorsee no right to sue the maker, and in refusing to direct a verdict for the defendants thereon, or to allow the issues to go to the jury.

"3. Because the presiding Judge erred in refusing to hold

5—69

that the striking out of the provision for ten per cent. attorneys' fees in·the notes was a material alteration and changed the character of the notes and should therefore avoid them.

"4. Because the presiding Judge erred in holding that the plaintiffs were not responsible ·for alterations in the notes made by one Cross, to whom they had been entrusted for the purpose of securing a change by consent of the makers; whereas the presiding Judge should have held that, from the testimony, Cross was the agent of plaintiffs and they were bound by acts of Cross, or otherwise he should have allowed the jury to determine from the testimony whether or not Cross was such agent.

"5. Because the presiding Judge erred in holding that an altered note was no note at all and thereafter directed a verdict for the plaintiffs on notes in this case proved to have been altered while in possession of plaintiffs; whereas, presiding Judge should have held that an altered note was no note at all, and that the alteration after notes came into possession of plaintiffs avoided the instruments.

"6. Because the presiding Judge erred in holding that one in possession of a note bearing *prima facie* evidence of alteration must rebut the presumption that the note was altered while in his possession, and thereafter directing a verdict in favor of plaintiffs, when the testimony showed conclusively that the notes in this case were altered while either actually or constructively in possession of plaintiffs; and said issue should have been submitted to the jury.

"7. Because the presiding Judge erred in holding that striking out the provision for ten per cent. attorneys' fees was a benefit to the defendants, and in holding that it must be shown that defendants had been injured by the alteration in these notes before they could avoid them by reason of such alteration.

"8. Because the presiding Judge erred in directing a verdict in favor of plaintiffs, when the proof was clear that the notes had been materially altered while in possession of plaintiffs, and whether or not said notes had been so altered

by plaintiffs being purely a matter of fact, the question was one exclusively for the jury to determine from the testimony."

*Messrs. V. E. DePass* and *J. G. Hughes,* for appellants, cite: *As to negotiability of note:* 21 Ency., 2 ed., 525; 18 S. C., 287.; 28 S. C., 504. *As to proof of fraudulent representations:* 4 Ency., 2 ed., 325; 1 Dan. on Neg. Inst., sec. 177. *Striking out a provision in a note, is an alteration:* 14 S. C., 357; 32 S. C., 238; 28 S. C., 406; 2 Dan. on Neg. Inst., sec. 1395; 1 N. & McC., 102; *and avoids it:* 2 Dan. on Neg. Inst., sec. 1375; 56 Ind., 100.

*Mr. W. W. Lewis,* contra, cites: *As to what is a negotiable note:* 1 Dan. on Neg. Inst., 4 ed., 40, 74 to 81; 18 S. C., 286; 28 S. C., 516; 32 S. C., 538; 14 Ency. P. & P., 641; 27 S. C., 132. *As to alteration:* 2 Dan. on Neg. Inst., 4 ed., 393, 390.

April 29, 1904. The opinion of the Court was delivered by

MR. CHIEF JUSTICE POPE. The defendants made their joint and several notes to Camp and Cross on the 22d May, 1901, in these words:

"$125.00.        Union, South Carolina, May 22, 1901.

"September 1st, 1901, after date, we either of us promise to pay to the order of Camp and Cross, one hundred and twenty-five dollars at the banking house of Wm. A. Nicholson & Son, bankers, at Union, S. C., value received with interest after maturity at the rate of eight per cent. per annum until paid. We agree in default of payment after maturity, to pay ten per cent. for attorneys' fees for collection. J. S. Harris, W. C. Nelson and R. N. Harris."

"$125.00.        Union, South Carolina, May 22d, 1901.

"November 1st, 1901, after date, we or either of us promise to pay to the order of Camp and Cross one hundred and twenty-five dollars at the banking house of Wm. A. Nicholson & Son, bankers, Union, S. C., value received with

interest after maturity at the rate of eight per cent. per annum until paid. We agree, in default of payment, after maturity, to pay ten per cent. attorneys' fees for collection. J. S. Harris, W. C. Nelson and R. N. Harris."

On the 14th of June, 1901, Camp and Cross, for value received, in writing, indorsed said two notes to T. H. White and M. S. Lewis. A few days after said notes had been transferred to T. H. White and M. S. Lewis, one Cross, of the firm of Camp and Cross, who had indorsed the two notes to White and Lewis, came to White and stated that he had seen in the Charleston *News and Courier,* a newspaper printed in the city of Charleston, S. C., that the words, "We agree in default of payment after maturity to pay ten per cent. attorneys' fees for collection," inserted in a note, otherwise negotiable, would render such note unnegotiable. Cross then stated that he did not wish to have any trouble about this in the future, and that if White and Lewis would turn over the two notes to him, he would go to Union, S. C., and obtain those words stricken out from each note by the makers of said notes. He receipted to White and Lewis for the two notes, and went to Union to see the makers. He only saw one of the makers, as hereinafter mentioned. But Cross did not go any further as to the makers, but with his own hand ran the pen through those words in each note and carried the notes thus altered to the new holders, White and Lewis, and delivered them up. Both White and Lewis always protested that, if the words erased was not the act of the makers, they disclaimed any right thereto. Not being paid at maturity, White and Lewis had the notes duly protested for non-payment, and they thereafter brought this action against the three makers, as defendants. These defendants denied their liability, insisting that the notes had been altered after they signed them, by striking out the words from said notes; we have already described—which words in the two notes rendered them unnegotiable. The defendants also claimed that being unnegotiable notes, they were entitled to show that the same in the hands of the

present plaintiffs were subject to any defense they had
against Camp and Cross, and they pleaded that said notes
were procured by gross misrepresentation and fraud. So
that the matters came on for trial before Judge Buchanan
and a jury. Both sides to the controversy asked the Judge
to instruct the jury to bring a verdict for the plaintiffs or
defendants, respectively. The Judge directed the jury to
return a verdict for the plaintiffs for principal and interest
and the costs of protest. This was done and judgment was
entered upon such verdict. The defendants now appeal.
The grounds of exception will be reported.

It must be apparent that this whole controversy is mainly
hinged upon the determination of the question: Were these
two notes negotiable or non-negotiable? The decisions of
the Supreme Court of this State have not as yet
settled what effect the insertion of the words, "we
agree in default of payment after maturity to pay ten
per cent. attorneys' fee for collection," in a note, will have
upon it—that is, whether it is still a negotiable note or does
it become an unnegotiable note. In the case of *Sylvester,
Bleckley & Co.* v. *Alewine et al.,* 48 S. C., 308, 26 S. E., 609,
this identical question was presented. Two Justices, Mr.
Justice Gary and Mr. Chief Justice McIver, there held that
the note becomes unnegotiable, while Mr. Justice Jones
held to the contrary, and Mr. Justice Pope expressed no
opinion on this question, holding that a new trial had to be
ordered because of the mistake of the trial Judge in im-
properly sustaining a demurrer. The two decisions of *Bank*
v. *Gary,* 18 S. C., 282, and *Bank* v. *Strother,* 28 S. C., 505,
6 S. E., 313, are in no way decisive of this question. A
promissory note is said, in 2 A. & E. Ency., 314, to be "a
written engagement by one person to pay another absolutely
and unconditionally a certain sum of money at a time speci-
fied therein." These two notes here sued on certainly fill all
the requirements of promissory notes down to the words we
have already quoted. Do these words change the character
of these notes? We think not. The ten per cent. attorneys'

fees are not to be paid until after the maturity of the notes. Besides, it has always been held in this State that a provision in a note for the payment of protest fees, never alters the character of a promissory note. It is true, that it is held in this State that a provision in a promissory note for the payment of the cost of exchange will change it to a non-negotiable note, why? Because the cost of exchange is an ever-varying matter. But look at these words: "We agree if this note is not paid at maturity, we will pay ten per cent. attorneys' fees." Are they not definite and certain? Very different are these words from those used in *Bank* v. *Strother, supra,* where a provision was inserted in the note to pay *reasonable attorneys' fees and costs.* Nothing could be more uncertain than the words used in the latter case. Now, we would use words of no uncertain sound or meaning. We wish to hold a definite and distinct promise to pay five or ten per cent. attorneys' fees in an otherwise clear promissory note will not change its character from a promissory note.

With reference to exceptions alleging error in holding that striking out said provisions for attorneys' fees is not a material alteration. The material alteration of a note extinguishes all liability thereon as against parties not consenting. *Sanders* v. *Bagwell,* 32 S. C., 238, 10 S. E., 946. Whatever changes the legal effect of the instrument is a material alteration. "The test is not whether an alteration increases or reduces a party's liability, but whether the instrument expresses the same contract— whether it will have the same legal effect and operation after the alteration as before." 2 A. & E. Ency. Law, 2 ed., 224, 225, and notes. The stipulation as to attorney fees is not material, in so far as the question of negotiability is concerned, but it is certainly material, in so far as the contract liability of the parties is concerned. To add such words to a contract would certainly be a material change; to strike them out must also be material, if the test is whether the legal effect of the instrument is altered. In 2 Ency. Law, 238, it

is stated: "Any alteration in the amount of the principal of an instrument conditioned for the payment of money is material, whether such alteration increases or decreases the amount. Thus it has been considered a material alteration of an instrument to insert therein (*Monroe* v. *Paddock,* 7 Ind., 422), or erase therefrom (*Bank* v. *Laughlin,* 4 N. Dak., 391), a provision for the payment of attorneys' fees in the case of suit brought, or to change the amount of the fee which is provided for in such clause (*Burwell* v. *Orr,* 84 Ill., 465)." See, also, *Coburn* v. *Webb,* 56 Ind., 96; 26 Am. Rep., 15; 2 Daniel Neg. Inst., 3ed., sec. 1375; *Sanders* v. *Bagwell, supra.*

Now, with reference to whether the case should have been submitted to the jury. It does not appear that there was any evidence that defendants, J. S. Harris and R. N. Harris, ever consented to the alteration of the note by Cross, but it was a matter proper for the jury to consider whether defendant, W. C. Nelson, consented to such alteration. It is true, he testified that he did not consent, but, on the other hand, he testified to the effect that the change was made by Cross in his presence, and that he told Cross, "if he wanted, to change it." It was for the jury to say whether Cross made the change in the presence of W. C. Nelson and with his acquiescence. If so, Nelson would be bound, whether the other defendants are released or not.

Furthermore, touching the question whether the change in the notes was an alteration or a spoliation, the case should have been submitted to the jury, under proper instructions as to the law. Contrary to the rule in England, the authorities in the United States generally hold that if a stranger to the contract, without any complicity with the grantee or obligee, materially alters an instrument in writing, that is a spoliation, and does not prevent a recovery on the original contract. 2 Dan. Neg. Inst., 3d ed., sec. 1373; 2 Ency. Law, 2d ed., 214. Was Cross a stranger to the contract; having indorsed the same to the plaintiff? What was the character of the indorsement, was it without recourse, and

was he liable to pay the notes in any contingency at the time he made the change? Then, if we should suppose that Cross was a stranger to the contract, it must still be determined whether there was any privity between plaintiffs and Cross with respect to such alteration, a question proper for the jury in this case.

For these reasons we think the judgment should be reversed and the case remanded for a new trial, and it is so adjudged.

MR. JUSTICE GARY, *dissenting.* I adhere to the views expressed by me in the case of *Sylvester, Bleckley Co.* v. *Alewine,* 48 S. C., 308, 26 S. E., 609, and, therefore, dissent on the ground that the note was non-negotiable.