CLYDE S. S. CO. v. WHALEY et al.

(Circuit Court of Appeals, Fourth Circuit. February 2, 1916.)

No. 1367.

1. ALTERATION OF INSTRUMENTS ⬤⟿3—EFFECT OF—"MATERIAL ALTERATION."
    Where plaintiff's agent stored goods with warehousemen, who issued receipts in the name of the agent, not knowing that plaintiff was the real party in interest, the substitution of the name of plaintiff and erasure of the agent's name from the receipts was a "material alteration," which, if made by a party in interest, would render the instrument void, despite the rule that the substitution of one name for another is immaterial, when the name of the real party intended is inserted.
    [Ed. Note.—For other cases, see Alteration of Instruments, Cent. Dig. §§ 5–15; Dec. Dig. ⬤⟿3.
    For other definitions, see Words and Phrases, First and Second Series, Material Alteration.]

2. ALTERATION OF INSTRUMENTS ⬤⟿11(2)—EFFECT—ALTERATION BY STRANGER.
    A material change in a written instrument avoids it against one party, only when it is made by the other party or with his consent, and an alteration by a stranger, or by an agent without authority, is only a spoliation, not affecting the instrument's validity.
    [Ed. Note.—For other cases, see Alteration of Instruments, Cent. Dig. §§ 61–66, 68–71; Dec. Dig. ⬤⟿11(2).]

3. ALTERATION OF INSTRUMENTS ⬤⟿11(2)—AUTHORITY OF AGENT.
    A steamship company directed its agent to store goods with defendants, who were warehousemen. Defendants issued the receipts to the agent. Held, that for the agent to erase its name and insert that of its principal, the steamship company, was not an alteration preventing the company as an undisclosed principal from enforcing the contract, for an agent of a party to the instrument, not authorized to change it, is deemed a

stranger, and the agent, because authorized to store the goods, was not empowered to change the receipts.

[Ed. Note.—For other cases, see Alteration of Instruments, Cent. Dig. §§ 61–66, 68–71; Dec. Dig. ☞11(2).]

4. WAREHOUSEMEN ☞25(5)— LIABILITY.

Civ. Code S. C. 1902, §§ 1719–1721, respectively provide that warehousemen shall not transfer or remove goods for which a receipt has been given without the written assent of the persons holding the receipt, that warehouse receipts may be transferred by indorsement and delivery, but that those provisions forbidding delivery of property except on surrender and cancellation of the original receipt or the indorsement of delivery thereon, in case of partial delivery, shall not apply to property replevied or removed by operation of law. The agent of a steamship company stored its property with defendant warehousemen, and they issued a receipt in the name of the agent. Thereafter the agent, having erased its name and inserted that of its principal, directed the warehousemen to deliver to it a portion of the goods. *Held* that, as the original receipt was not produced and canceled, nor was delivery indorsed thereon, the warehousemen were liable to the principal for delivery to the agent.

[Ed. Note.—For other cases, see Warehousemen, Cent. Dig. §§ 42–45; Dec. Dig. ☞25(5).]

In Error to the District Court of the United States for the Eastern District of South Carolina, at Charleston; Henry A. Middleton Smith, Judge.

Action by the Clyde Steamship Company against W. B. Whaley and others. There was a judgment for defendants, and plaintiff brings error. Reversed.

J. P. K. Bryan, of Charleston, S. C., for plaintiff in error.

Huger Sinkler and Nathaniel B. Barnwell, both of Charleston, S. C. (Whaley, Barnwell & Grimball, Mitchell & Smith, and Nathans & Sinkler, all of Charleston, S. C., on the brief), for defendants in error.

Before PRITCHARD, KNAPP, and WOODS, Circuit Judges.

WOODS, Circuit Judge. The Clyde Steamship Company brought this action to recover $3,592.52, the value of 38 bales of burlaps stored with W. B. Whaley and A. Hasell Heyward, doing business as warehousemen under the name of Boyce's Wharf. By consent the cause was tried without a jury. The District Judge found that the plaintiff should recover nothing, and that the defendant should recover $391.50, its undenied counterclaim for storage. Judgment was entered accordingly, and the cause comes here on error assigned in the rejection of the plaintiff's claim.

The facts are not in dispute. In November, 1907, the Clyde Steamship Company held 251 bales of burlaps in Charleston under bill of lading calling for delivery to the order of the consignor. The shipment was intended for the Goldsmith Manufacturing Company, and was to be delivered to that company on presentation of the bills of lading duly endorsed. The Steamship Company, being pressed for room on its wharf, asked the Goldsmith Company to arrange for it the storage of the burlaps at some other wharf pending the presentation of

the bills of lading. Accordingly the Goldsmith Company arranged to store the goods with Whaley and Heyward on Boyce's Wharf; and the Steamship Company had the goods delivered there. The agency of the Goldsmith Company was not disclosed to Whaley and Heyward, and they issued warehouse receipts for 277 bales of burlaps in the name of the Goldsmith Company as if it were the owner of the entire lot. Afterwards the Goldsmith Company in accounting with the Steamship Company admitted that it had received and stored for the Steamship Company on Boyce's Wharf 251 bales of burlaps, and turned over the warehouse receipts for that number of bales, from which it had erased its own name and written in the place of it the Clyde Steamship Company. On the same day it gave a written order to Boyce's Wharf directing that 229 bales—22 bales short of the 251 bales—be held for the order of the Steamship Company, and the remaining 48 bales of the 277 bales for its own order. Whaley and Heyward knew nothing of the alteration of the receipts or their delivery to the Steamship Company; but they delivered to the Steamship Company the 229 bales according to the written order of the Goldsmith Company. On the other hand, the Steamship Company took the receipts for the 251 bales from the Goldsmith Company, supposing that the alteration had been made before their delivery to the Goldsmith Company. At the trial the plaintiff relied on the receipts, and proof of the agency of the Goldsmith Company as evidence of its right to recover the value of 22 bales, the difference between 251 bales called for by the receipts turned over to it by the Goldsmith Company and 229 bales, the number received by it from Boyce's Wharf. The District Judge held that the erasure of one name and the substitution of the other was a material alteration, which annulled the receipts, and that therefore no recovery could be based on them.

[1] The rule is too well settled for serious discussion that the erasure of the name of the payee or obligee in a written instrument and the insertion of the name of another person is a material alteration, and that such an alteration when made by a party in interest will render the instrument void. The rule is founded upon the public necessity that written instruments should be kept inviolate, and upon the principle that the writing as made by both parties binds and not that which one of the parties has attempted to substitute. Steele v. Spencer, 1 Pet. 552, 7 L. Ed. 259; Ann. Cas. 1913C, 180, note; 10 Am. Dec. 267, note; 86 Am. St. Rep. 80, note; 35 L. R. A. 464, note; 1 R. C. L. 973; 2 Corpus Juris, 1214; Sanders v. Bagwell, 32 S. C. 238, 10 S. E. 946, 7 L. R. A. 743; White v. Harris, 69 S. C. 65, 48 S. E. 41, 104 Am. St. Rep. 791. A limitation of the rule is that the substitution of one name for another is not a material alteration, where it amounts to nothing more than inserting the real name of the party intended. Such a change does not alter the instrument, for the person intended, though incorrectly named, could be shown by parol. Mouchet v. Cason & Hill, 1 Brev. (S. C.) 307; Hanrick v. Patrick, 119 U. S. 156, 7 Sup. Ct. 147, 30 L. Ed. 396; 22 Ann. Cas. 1045, note. Manifestly the erasure of the name "Goldsmith Manufacturing Company" and the substitution of the name "Clyde Steamship Company" was a material

alteration; it was not the mere giving of the real name of the party intended, for Whaley and Heyward did not know the Steamship Company in the transaction.

[2, 3] There is, however, another rule as well established as that just stated. A material change in a written instrument avoids it against one party only when it is made by the other party or with his consent, and a change made by a stranger (that is, one who has no legal interest in the instrument) without authority from the party in interest is only a spoliation, not affecting its validity. An agent of a party to the instrument not authorized to change it is in this sense a stranger without legal interest, and a change made by such agent does not destroy the paper, but leaves it a valid contract binding according to its original form. Flinn & Hart v. Brown, 6 S. C. 229; Equitable Mfg. Co. v. Allen, 76 Vt. 22, 56 Atl. 87, 104 Am. St. Rep. 915; Langenberger v. Kroeger, 48 Cal. 147, 17 Am. Rep. 418; Burgess v. Blake (Ala.) 86 Am. St. Rep. 103, note; White Sewing Machine Co. v. Dakin, 86 Mich. 581, 49 N. W. 583, 13 L. R. A. 313; Gleason v. Hamilton, 138 N. Y. 353, 34 N. E. 203, 21 L. R. A. 210; Vanderford v. Farmers' & M. N. Bank, 105 Md. 164, 66 Atl. 47, 10 L. R. A. (N. S.) 129; 2 Corpus Juris, 1336; Kingan & Co. v. Silvers et al., 13 Ind. App. 80, 37 N. E. 413; Tulane University v. O'Connor et al., 192 Mass. 428, 78 N. E. 494. The alteration of the agent does not destroy the instrument, even when the other contracting party makes the obligation to the agent in his own name supposing him to be the principal. In that case, in the absence of fraudulent concealment on his part, the principal, being the real party in interest, has the right to enforce the contract in its original form upon proof that the nominal payee or obligee was his agent.

In Hunt v. Gray, 35 N. J. Law, 227, 10 Am. Rep. 232, John T. Hunt sold a horse for George Hunt and took the note of the purchaser to himself as payee without disclosing his agency. He altered the note without the consent of George Hunt. In holding that the alteration did not annul the paper, Chief Justice Beasley said:

"The alteration of this note was not the act of the plaintiff, because the person who made it was not his agent for that purpose. These were the facts: John T. Hunt was the agent who sold the plaintiff's horse for him; in that transaction he took * * * it to the bank and had it discounted, the proceeds going to the plaintiff. From these circumstances an authority to alter this note cannot be inferred. It was not an act that properly appertained to the transaction to which the agency related. It could not have been within the contemplation of either the principal or the agent, at the time of the creation of the agency. Consequently, the act must be regarded as though done by a stranger, without the concurrence, express or implied, of the plaintiff."

The rule is thus well stated in Spreng v. Juni, 109 Minn. 85, 122 N. W. 1015, 18 Ann. Cas. 222:

"The owner of a promissory note, in which a third party is named as payee, may maintain an action upon it, without indorsement, upon proof of such ownership by evidence other than the note. Cassidy v. Faribault First National Bank, 30 Minn. 86, 14 N. W. 363. Again, a change in a written contract by a stranger thereto is not an alteration, but a spoliation, which does not avoid it, and the obligee may enforce it in its original form, as if no change had been made. If the change is made by an agent having no author-

ity which includes the making of such change, it does not avoid the contract, unless ratified by the principal. 3 Page on Contracts, 1514, 1515; Ames v. Brown, 22 Minn. 257."

The reason of the rule that a change made by an agent, who had authority to take the paper, but not to alter it, does not destroy it, is well illustrated by the case now under consideration. To reduce the matter to its simplest form, let it be assumed that the goods are still in the possession of Boyce's Wharf. The Steamship Company owned the goods. The agency of Goldsmith Company was limited to the storage and taking the receipts. The receipts in whatever form taken, being for the goods of the Steamship Company were also the property of the Steamship Company, and it could recover upon them upon proof that the Goldsmith Company was their agent in storing the goods and taking the receipts. Would the fact that the Goldsmith Company altered the receipts without authority from the Steamship Company make them of no effect? It seems plain on principle and under the authorities cited that the question must receive a negative answer. The authority of an agent to destroy by alteration a paper taken on behalf of his principal is not to be presumed, and there was no evidence of authority to alter. On the contrary, the fact was that the Steamship Company took the receipts without knowledge of an alteration after delivery, supposing that its own name had been inserted before delivery of the receipts.

Under the circumstances we cannot resist the conclusion that the unauthorized change made in the receipts by the agent was a mere spoliation; that they were valid instruments in the hands of the Clyde Steamship Company, and the Steamship Company would be entitled to recover on them upon proof of the agency of the Goldsmith Company if the goods were still in the hands of the warehousemen.

[4] This brings us to the question whether the warehousemen are protected from the plaintiff's claim by delivery to the Goldsmith Company, because they had received the goods from the Goldsmith Company and delivered them to that company without notice of the Steamship Company's interest. We express no opinion as to what would be the rights of the parties under the common law or the rules of equity, because the question is answered by the statutes of South Carolina in force at the date of these transactions.

Section 1719, Code of 1902, prohibits warehousemen from transferring or removing beyond their control goods held on storage for which a receipt has been given without the written assent of the person or persons *holding* such receipt.

Section 1720 provides that warehouse receipts—

"may be transferred by indorsement and delivery thereof, to the purchaser or pledgee, signed by the person to whom the receipt was originally given, or by an endorsee of such receipt; and any person to whom the same may be so transferred shall be deemed and taken to be the owner of the goods, wares and merchandise therein specified, so far as to give validity to any pledge, lien or transfer made or created by such person or persons; but no property shall be delivered except on surrender and cancellation of said original receipt or the endorsement of such delivery thereon in case of partial delivery. The assignment of warehouse receipts which shall have the words 'Not Negotiable'

plainly written or stamped on the face thereof shall not be effective until recorded on the books of the warehousemen issuing them."

### Section 1721 provides:

"So much of the preceding sections 1719 and 1720 as forbids the delivery of property except on surrender and cancellation of the original receipt or the endorsement of such delivery thereon, in the case of partial delivery, shall not apply to property replevied or removed by operation of law."

Other sections of the statute make the delivery of goods by a warehouseman without surrender or cancellation of the receipts a criminal offense, and give a right of action against the warehouseman in favor of any person sustaining damages either immediate or consequential by reason of such violation of the statute.

The provision of the statute that goods in storage should not be delivered except on surrender and cancellation of the receipt, or indorsement thereon in case of partial delivery, was as much a part of the contract as if it had been written in the receipts by the warehousemen. Hence the Steamship Company, which rightfully acquired and held the receipts as its own property, was authorized to rely on this provision of the law as a part of the contract. Indeed we cannot doubt that one of the purposes of the law was to meet just such conditions as have here arisen. Business men as a rule must deliver their goods to warehousemen through agents. But the owner is in a degree protected against fraud and mistake of his agent in having the receipt made out in his own name, by the statute which forbids the warehousemen to deliver the goods to the depositor or any other person without the production of the receipt and due entry of the delivery. If he delivers without the production of the receipt it is at his own risk. The statute is also a beneficent protection to the warehouseman against claimants who do not present the receipts.

Even as to bills of lading which do not fall under the statutes above cited, Chief Justice McIver said for the Court in National Bank of Chester v. Atlanta & Charlotte Air Line Railway Company, 25 S. C. 224:

"It is true that a carrier may safely deliver goods intrusted to him for transportation to the person rightfully entitled to receive them, even without the production of the bill of lading, but in such a case he takes upon himself the burden of showing that the delivery was to the proper person, and this he must show as a matter of defense; for when it is once shown that he has delivered the goods to one not holding the bill of lading, a prima facie case is made out against him, which can only be rebutted by showing that although he made the delivery without the production of the bill of lading, yet he has in fact delivered to the very person who, according to the terms of the bill of lading, was entitled to receive the goods. In other words, the bill of lading in his contract by which he agrees to deliver the goods entrusted to him for transportation to the person named therein or to his order; and if he delivers them to any one else and loss ensues to the person entitled to receive the goods, he becomes liable."

The Supreme Court of the United States has laid down the rule as to warehouse receipts that the obligation of the warehouseman is "not to deliver without a surrender of the receipts." "The duty of the warehouseman is performed when he gets the property into his own possession before he issues the receipt, and transfers that posses-

sion when demanded to the lawful holder of the receipt." Insurance Co. v. Kiger, 103 U. S. 352, 26 L. Ed. 433. Under a statute prohibiting a warehouseman from transferring or removing beyond his immediate control goods for which a receipt has been given without the written consent of the holder and the production of the receipt, the Court of Appeals of Kentucky held that no one could obtain the property except the holder of the receipt and that the warehouseman could assert no claim or set-off against the holder unless the receipt shows such right to exist. Cochran v. Ripy, 13 Bush, 495.

It is regrettable that the loss must fall on the warehousemen who delivered the goods in good faith to the person who deposited them and to whom they issued the receipts. But the conclusion cannot be escaped that the loss was due to the violation by the warehousemen of an express provision of the statute upon the observance of which the Steamship Company as the lawful holder of the receipts had a right to rely for its protection.

Reversed.